# EXHIBIT "A"

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - x
                              :
KENNETH W. JONES,             :   No. 3:08CV802(RNC)
                              :
              Plaintiff,      :
                              :
      vs                      :
                              :
MIDLAND FUNDING, LLC, ET AL,  :
                              :   HARTFORD, CONNECTICUT
              Defendants.     :   OCTOBER 7, 2010
                              :
- - - - - - - - - - - - - - - x




TELEPHONE CONFERENCE


BEFORE:

        HON. ROBERT N. CHATIGNY, U.S.D.J.






                    Darlene A. Warner, RDR, CRR
                    Official Court Reporter

APPEARANCES:

    FOR THE PLAINTIFF:

        LAW OFFICES OF JOANNE FAULKNER
            123 Avon Street
            New Haven, Connecticut 06511-2422
        BY:  JOANNE S. FAULKNER, ESQ.

        FRANCIS & MAILMAN, P.C.
            Land Title Building, 19th Floor
            100 South Broad Street
            Philadelphi, Pennsylvania
        BY:  JAMES A. FRANCIS, ESQ.

    FOR THE DEFENDANT:

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER -NY
            3 Gannett Drive
            White Plains, New York 10604
        BY:  THOMAS A. LEGHORN, ESQ.

        WILSON, ELSER, MOSKOWITZ, EDELMAN & Dicker -CT
            1010 Washington Boulevard
            Stamford, Connecticut 06901
        BY:  JILL E. ALWARD, ESQ.

<u>11:00 A.M.</u>

THE COURT:  Hello.

MS. FAULKNER:  Good morning, Your Honor, this is Joanne Faulkner, attorney for plaintiff Kenneth Jones.

THE COURT:  Good morning.

MR. LEGHORN:  Your Honor, Thomas Leghorn and Jill Alward from Wilson Elser for the defendants.

MR. FRANCIS:  Good morning, Your Honor, Jim Francis, also with Ms. Faulkner for the plaintiff.

THE COURT:  Is that everybody?

I wanted to speak with you about the pending motion for summary judgment.  In particular, I wanted to give plaintiff's counsel an opportunity to comment on the decision in the Adlam case which was submitted by the defense in support of the pending motion, and I also wanted to review with you what appear to be some discrepancies with regard to the letters at issue.  We may be able to sort those out.  I hope we will.

But starting with the first point, in the Adlam case, Judge Scheindlin in the Eastern District of New York dismissed a claim based on the debt collector's failure to disclose that the amount of the debt could increase stating that even the least sophisticated consumer would

know that interest accrues on credit card debt.

Given that we have the very same type of claim here, I thought it would be appropriate to give plaintiff's counsel a chance to comment.  So here is your opportunity to do so if you wish.

MS. FAULKNER:  I don't see the Adlam case cited in their motion and I'm not sure that I am familiar with it, Your Honor.  Can you give us the citation?

THE COURT:  Sure.  The case is reported online in the Westlaw system at 2010 WL 1328958.

MR. LEGHORN:  Your Honor, this is Tom Leghorn. The full text of the decision is document 103 on our case file with Pacer.  It's there.  It went in with our supplemental brief of April 29th, 2010.

THE COURT:  Right.  And if you haven't seen it --

MS. FAULKNER:  We were not alerted to the fact that you were going to ask us about anything.  We just thought this was about the letters, so obviously I apologize.  I did not go back and look at that.

THE COURT:  Okay.  Well --

MS. FAULKNER:  If they filed something supplemental, we may have asked that we could respond and --

THE COURT:  No.  The supplemental submission

came in and to my knowledge there hasn't been any response
from your side and that's why I wanted to give you an
opportunity to comment.

The basic point that she makes is, as I said,
that even the least sophisticated consumer would know that
interest accrues on credit card debt, and what I'm doing
this morning is giving you an opportunity to comment on
that.

Do you agree with that or do you disagree with
that?

MS. FAULKNER:  Well, without the decision, I
don't know, Your Honor, but the fact is that we have cited
many, many cases that disagree with that proposition.  In
fact, I think there's the Goins case in Connecticut and I
think there's one other case in Connecticut that actually
says that you have to use this Miller v. McCalla warning
in your initial letter so that the consumer will know that
if he or she sends in a check, they've got to check
beforehand to see how much it should be, otherwise the
least sophisticated consumer gets the idea that this is
the amount.

THE COURT:  I guess Judge Scheindlin and the
judges who have followed her have a different view of what
the least sophisticated consumer would understand insofar
as interest accruing on credit card debt is concerned.

3

In any case, let me give defendants' counsel an opportunity to comment further on this point before I turn to the letters.

MR. LEGHORN:  Thank you, Your Honor, this is Tom Leghorn.

We think that the Judge Scheindlin order is squarely on point and the case that Ms. Faulkner cited and all of the cases that were cited in her opposing brief, in our reply brief, we address each and every one of them as to why those cases were distinguishable from the facts before Your Honor as well as what appeared to be the facts before Judge Scheindlin.

We feel that in this situation any of the differences that appeared in those other cases which may have permitted those contrary rulings are not present here, and this is a matter where the debtor was advised of the actual balance, was given a date certain in the future by which that number would still be good and valid, and as discovery has shown here, this defendant would even have honored it for a period of time after that date if they showed up.

But there was no confusion here in these letters as to what the outstanding balance was.  We believe Judge Scheindlin and others are absolutely correct when dealing with credit card debt, even the least sophisticated

4

consumer recognizes that interest accrues, continues to accrue. And in fact after this debtor asks for validation, the -- all of the credit card statements which showed the progress of the accrual of interest was indeed provided to them. And that there is no need in any of these letters to use the language that Ms. Faulkner cited from the Miller case, which was in a situation where it was a real property loan in which the letter did not give a definitive number. In fact, it indicated that the principal was X and that to determine the actual amount owing, which would continue to accrue, they had to take some other action.

Totally distinguishable from here, and cases afterwards dealing with credit card debt, I would say overwhelmingly have endorsed the argument that such cautionary language is not necessary in a letter such as before Your Honor.

MS. FAULKNER: I'm just reading this real fast, Your Honor, and in the Adlam case, there was only one letter at issue and there was never, as far as -- I'm reading it fast -- there was never a follow up letter to show that in fact anything increased. The Adlam case showed only the first letter, and we don't know whether any interest was added. Here we have three letters, so we know that additional interest was added. And I think the

5

judge in that Adlam case was just looking at one letter and not at the course of events.

If the interest hadn't increased, obviously we wouldn't be here.  We did not bring this just on the first letter and kind of on a blind theory that maybe the balance would increased.  But here it did increase and there was no explanation as required by the Seventh Circuit.

MR. LEGHORN:  I think, Your Honor, if you do look at the facts as laid out by Judge Scheindlin, this was a matter of a series of letters taking place over a period of time in which there was progression of the amounts due.

THE COURT:  It seems to me that the Adlam case is closely analogous and it has been followed by district courts in at least two instances.

If I were to follow that line of authority, then I think the defendants' motion for summary judgment would have to be granted.

But let me turn to the letters and see if I can gain clarification with regard to what the letters themselves consisted of.

MR. FRANCIS:  Your Honor, this is Jim Francis, as I stated before, I'm also with Ms. Faulkner on behalf of the plaintiff.  May I be heard just one minute in terms

6

of responding to the summary judgment brief regarding the letters and the Adlam case?

THE COURT:  All right.

MR. FRANCIS:  I don't know that the Court's finding in the Adlam decision alters the analysis here, because whether or not the least sophisticated consumer knows that interest varies over time or may vary over time, number one, does nothing to inform that consumer as to what the amount of the debt is.

Moreover, sometimes interest is assessed on a day-to-day basis, sometimes it's assessed on a monthly basis, sometimes it's assessed on an annual basis.

The purpose of the McCalla decision and the explanatory language the Seventh Circuit handed down was to put the consumer in the position to know exactly what was being stated, what the debt was at that time.  And the Court came up with explanatory language which would -- which would provide a context for that.

Here, as I think the debate between Mr. Leghorn and Ms. Faulkner has just illustrated, nobody still knows what this debt was, what it was on the date that the consumer and the plaintiff received the letter, whether or not there was interest that was running on a daily basis or a monthly basis or a yearly basis, whether or not the language that this is the debt that is owed now, is now

7

the date of the sending of the letter or when the consumer receives it?  It's unclear, and that is what is contrary to the Fair Debt Collection Practices Act.

So I guess the way at least I see it is it doesn't matter whether or not the least sophisticated consumer would know in the real world, for lack of a better way to describe it, that interest can run on a credit card.  The point is what do I owe now?  Is it going to change by the end of the month?  Is it going to change by the time I write my check today?  Or am I going to have to do what the Seventh Circuit did not want the consumer to have to do, is call up, get a debt collector on the phone to then engage in that process.

So I just don't think it has any impact at all for the violation and the facts here in the letters and the sequence of letters at issue before the Court.

MS. FAULKNER:  In addition, we did establish that it was daily interest here, not once a month or, you know, once a year.  It was daily.

THE COURT:  Okay.

MR. LEGHORN:  And Your Honor, Tom Leghorn.  And I can use that to get to the point about the letters.

The first letter that went out was dated June 24, 2007, and on the first page, it is advising -- the very bottom of it it says the current balance is

8

$2,095.06.  It offered a discount that it could be paid at $1,885.55.  But this June 4th letter expressly tells the debtor that this amount will be accepted if received almost 45 days later, by August 8th, 2007, and that there will be no change whatsoever if you pay it anytime between that.  There was no need to call to find out what was the payment that would be accepted in full.  That was going to hold for that period of time.

If there was any question, it provided a phone number that they could call, but it was expressed explicitly that this number is good until then.  And from the discovery taken by plaintiffs, it was learned that if actually this money had been sent in after that for a period maybe as long as another 30, 40 days, it too would have been accepted without any difficulties.  So we don't have those situations present here, Your Honor.

So that first letter was the -- that one page called "Settlement Opportunity" at the top, dated June 24, 2007, and attached to it was a second page which in the top left said "Important Disclosure Information," which is commonly referred to as a "Validation Notice," that was the first letter.

Do you agree, Joanne?

THE COURT:  Well, let me tell you what has happened from my point of view.

9

The parties' submissions were in conflict with regard to what these letters actually consisted of, and as of this morning, it's my understanding that the plaintiff's counsel submitted via email what they understand to be the letters. These documents, which are in front of me, help to clarify the situation.

I should note, previously the plaintiff had stated in discovery that none of the letters had two sides, and there was confusion about whether the letters were a single page or whether they had multiple pages. I wanted to be sure to get this straight because it's important in a case like this.

Accordingly, let me tell you what the plaintiff has submitted this morning and be sure that everybody is in agreement.

The first letter is dated 6/24/07 and it shows a current balance on the first page of $2,095.06. The letter explains, as Mr. Leghorn just summarized, that the consumer could settle the debt in full if he paid a lesser sum by August 8, 2007, the lesser sum being $1,885.55, thus the tear-off coupon at the bottom shows a current balance of $2,095.06 with an amount due of $1,885.55 and a payment due date of August 8, 2007.

This letter had apparently on its reverse side what I'll refer to as a second page. This page is headed

10

"Important Disclosure Information," as Mr. Leghorn noted just now. Within that page there appears a current balance of $2,095.06, which matches the current balance on the front.

So can we agree that the letter of June 24, 2007 had two sides to it and contained the figures that I just cited? Is that agreed, Mr. Leghorn?

MR. LEGHORN: Yes.

THE COURT: Okay. And I'll turn then to the second letter.

MS. FAULKNER: May I comment, Your Honor?

These documents were submitted by defendant but we do agree with what you just said.

THE COURT: All right, thank you.

With regard to the second letter, it's dated October 19, 2007 and addressed to the plaintiff, and it states, "Per your request, enclosed are documents for the above referenced account."

The letter continues: "Midland Credit Management, Inc. is requesting an immediate payment of balance in full. Upon receipt of the payment and payment clearing the bank, we will report a paid status on your credit report for the above-referenced account."

Attached to this letter are numerous pages bearing the Eddie Bauer logo showing an account summary

11

for this account and nothing else.

I should note that on the face of the letter of October 19, 2007, there is an entry which reads:  Balance $2,137.24.  This balance reflects an increase from the current balance shown on the letter of June 24, 2007, which again was $2,095.06.

Is there any disagreement that this was letter two in its entirety as I have described it?

MS. FAULKNER:  No, Your Honor.

THE COURT:  Okay.  Thank you.

Finally, letter three is dated October 26, 2007, and this letter appears to have been like the first letter in that it had two sides, with the second side headed "Important Disclosure Information."Unlike the first letter, however, this one included an additional page entitled "Statement," showing a statement of the account.

Are we in agreement that the third letter consisted of two pages with this additional page headed "Statement"?

MS. FAULKNER:  We are not.

MR. LEGHORN:  Your Honor, this is Tom Leghorn. Ms. Faulkner brought up the fact --

I think, Ms. Faulkner, it's your position it's the first page and the page that's called "Statement," correct?

12

MS. FAULKNER:  Yes, the first page and then it was on the reverse was the statement.  The important disclosure information was --

MR. LEGHORN:  And, Your Honor, Ms. Faulkner brought this discrepancy to our attention this morning that apparently in our discovery responses we produced the document as she states with the face page and the statement and not the important disclosure information.

And Ms. Alward, you've confirmed that, correct? That that's all we produced?

Jill, you still there?

MS. ALWARD:  I'm sorry, that's correct, yes.

THE COURT:  For the record, could you please identify the person who just spoke.

MS. ALWARD:  I'm sorry, Your Honor, this is Jill Alward from Wilson, Elser, also for the defendant.

MS. FAULKNER:  And that, as you sent in to the Court, refers to a different amount due on that important disclosure information so --

MR. LEGHORN:  Right.  And that's what led me to realize that Ms. Faulkner was correct, that somewhere in the assembling of this, the important disclosure from the first letter, which was somehow inadvertently put in with this third letter, because as Ms. Faulkner points out, the current balance is the same as the first letter.

13

So, Your Honor, that second important disclosure information sheet is not part of the third letter.  And as Ms. Faulkner states, the third letter is just that October 26, 2007 letter with the reverse side being what is produced as a document called "Statement" showing a new balance of $2,139.83, which matches up with the face sheet of that letter.  It's a two-page, not three-page document.

MS. FAULKNER:  Front and back.

THE COURT:  Thank you, that's very helpful. That explains the discrepancy.

At this point then we're in agreement that the third letter had two sides and the reverse side was entitled "Statement," correct?

MR. LEGHORN:  Correct, Your Honor.

THE COURT:  All right, very good.  Thank you.

With that resolved, it seems to me that motion for summary judgment is well-founded.  I recognize that counsel may disagree, but if we look at the first letter, it is as Mr. Leghorn accurately summarized it.

Looking at the contents of the letter, it's quite clear that the consumer was being called on to resolve the matter by making a payment of $1,885.55 on or before August 8, 2007.  By its terms the letter made it clear that such a payment would be accepted as payment in full.  There was no uncertainty about that, and I think

14

applying the least sophisticated consumer standard, one must conclude that there was no uncertainty in that regard.

It is true that the letter did not provide information concerning interest.  However, I don't think that the omission of information about interest violated the statute.  The debt collector had an obligation to accurately state the amount of the debt, and I believe that this requirement was satisfied.

The Adlam case quotes from the opinion in a case called Weiss v. Zwicker & Associates which is reported at 664 F. Supp. 2d at 214.  The pinpoint cite is 217.  This case was decided out of the Eastern District of New York in 2009.

In the Weiss case, a second letter showing a higher balance than a previous letter without an explanation of the reason for the increase was held not to violate the requirement that the creditor stated the amount of the debt.  The Court in Weiss recognized that this is nothing confusing or misleading about the increased amount of the debt in the second letter because even the most unsophisticated consumer would understand that credit card debt accrues interest, and that was the point that Judge Scheindlin followed in Adlam.

The Adlam and Weiss cases are I think persuasive

15

on this point.  They were followed recently by the
district judge in a case called Pifko v. CCB Credit
Services, Inc. which is reported on Westlaw at 2010
Westlaw 2771832 at paragraph 3.  This case is an Eastern
District of New York case decided last July.

In that case, the debt collector's letter
omitted to disclose that there would be further increases
and charges.  It appears to me that the letter at issue
there was similar to the letter of June 24, 2007 in our
case.  The Court stated that there is no authority for the
proposition that a debt collector must explain why a
consumer debt has increased, citing Weiss.  The Court went
on to say "On the contrary, including such additional
language may violate the FDCPA."  The Court said that the
debt collectors only had a duty to clearly state the
amount of the debt due, and they fulfilled that duty.
Accordingly the plaintiff's claims under
Section 1692g(a)(1) were dismissed.

With regard to letter 2, I grant you that it
shows an increase in the balance as mentioned earlier, and
again it does not provide an explanation for the increase,
but it seems to me that it clearly states the amount of
the debt, and under these recent cases, the debt collector
was not required to inform the consumer that interest had
accrued on this credit card debt.

16

When you get to the third letter, we see that the balance has increased slightly from $2,137.24 to $2,139.83.  Again no explanation for this increase is provided, but I think it would be clear even to the least sophisticated consumer that in the intervening week, interest had accrued.

The letter of October 26, 2007 seems to me to be clear in informing the consumer that the balance of $2,139.83 was the amount of the debt and that this would settle the account if it was paid by November 25, 2007. The payment due date stated on the face of the letter.

With regard to the reverse side, additional information not previously provided appears, including an interest rate of 8 percent, a total of accrued interest in the amount of $447.87, yielding this new balance of $2,139.83.

So let me give plaintiff's counsel a final opportunity to tell why one or more of these letters violated the statute.

If we accept as a basic premise that even the most unsophisticated person knows that credit card debt accrues interest, what was unclear about these letters?

MS. FAULKNER:  Well, if I could start, Your Honor, the first letter -- this is not credit card debt. This is a purchase account by an entity that purchases

17

accounts.  Often entities that purchase accounts do
not get interest.  In fact, when it was brought later,
interest was wiped out, the interest was not included in
the amount of the suit.

So if we know that credit cards do accrue
interest, we do not know, as a least sophisticated
consumer, what happens when the account is now in the
hands of a debt buyer.  Does the debt buyer add interest?
Does the debt buyer not add interest?  We don't know that.

It seems to me that knowing whether interest is
going to be added to this account is important for the
consumer to know whether to accept a settlement offer or
whether he can wait.

In addition, the fact that there was a firm
settlement offer, and certainly there was, doesn't tell
him what's going to happen if he does not accept the
settlement offer.  So we don't know, reading the first
letter, if interest is going to accrue on this type of an
account.  It seems to me that that is important
information and it seems to the Seventh Circuit that that
was important information.

I don't know that the Pifko case involved a debt
buyer.  I don't believe it did, and I'm not sure whether
the Adlam case involved a debt buyer.

So that's a big distinction, I think, as far as

18

what the least sophisticated consumer would expect from
anything.

       THE COURT:  Ms. Faulkner, you're going in and
out.  Are you using a speaker phone by any chance?

       MS. FAULKNER:  No, I am not.  I'm sorry.  I am
not.

       THE COURT:  Okay.

       MS. FAULKNER:  I'm right here with my mouth next
to the telephone.

       THE COURT:  All right, thank you.

       MS. FAULKNER:  There's probably too many people
on the line.

       THE COURT:  Okay.  You -- so you would have me
focus on the fact that this case involves a debt buyer and
the least sophisticated consumer would not know whether
once in the hands of a debt buyer the debt would continue
to accrue interest?

       MS. FAULKNER:  Right.

       THE COURT:  And this would be important because
the consumer would want to know whether interest would
accrue in order to decide whether to pay or wait?

       MS. FAULKNER:  Right.

       THE COURT:  Okay.  Mr. Leghorn, what do you say
to that?

       MR. LEGHORN:  Your Honor, I think that's a

19

distinction without significance.  You know, the initial

letter makes crystal clear to the debtor that in fact this

was a debt purchased from First Consumer National Bank and

is now servicing -- Midland Management Credit is servicing

the application.  And I was quickly trying to run through

some of the cases that have been cited.  And I believe

that at least a fair number of them did involve purchase

of debt where in those situations the debt purchaser, it's

basically the assignment of the contractual rights, is

they step into the shoes of the original creditor and that

contract between the debtor and the original creditor are

assignable and are assigned.  So I really strongly believe

that that is a distinction that does not change.  It's

still the same debt.

          And the FDCPA requires that the debtor be told

what the debt is.  And I think on each and every one of

those letters, clearly and affirmatively states, on each

occasion, what the current balance is.

          And beyond that, I disagree with counsel's

contentions that anything further was required.

          MS. FAULKNER:  The statements attached to the

third letter indicate a much higher interest rate than was

actually ultimately charged by the debt buyer.  So

obviously it seems to me important to know whether they're

going to get 15 percent interest, 14 percent interest, or

something else at the outset.

MR. LEGHORN:  Well, I believe it was made clear through discovery in this action when the matter ultimately gets to litigation, at times decisions are made for litigation purposes to seek a lower amount just to eliminate more points of contention to make it a more streamline litigation.  It doesn't reflect the fact that the interest was changing at all because there was a multitude of Eddie Bauer statements that was provided to this debtor.  And each and every one of those account summaries showed the daily periodic rate of interest and the annual percentage rate that was continuing forward.

And that third letter shows an interest rate which, you know, that was being applied on this account by Midland.

THE COURT:  Well, if we go back and look at the arguments that you've made in connection with the pending motion, the defendant argues that the letters clearly informed the consumer of the amount of the debt owed as of the date of the letter and the date through which payment of that amount would be accepted to satisfy the entire debt.  According to the defendant, this is all the law requires.  You need to inform the consumer of the total amount due on a date certain in the future at which time payment of that amount would be accepted in full

satisfaction of the entire debt.

The defendant claims that this is our case with regard to these three letters; is that right, Mr. Leghorn?

MR. LEGHORN:  Yes, Your Honor.

THE COURT:  So specifically it's your position that letter one, unambiguously informed the consumer that he could settle the matter by paying $1,885.55 on or before August 8, 2007, correct?

MR. LEGHORN:  Correct, Your Honor.

THE COURT:  Does the plaintiff disagree with that?  In other words, does the plaintiff deny that a payment of that amount by that date would satisfy the entire debt?

MS. FAULKNER:  No, I guess not.  But one of the problems with the offers is that they can be rescinded at any time.

THE COURT:  Well, I'm just focusing on the claim that I have in front of me, and in that regard, the claim as I understand it is that the defendants violated the statute by failing to accurately disclose the correct amount due on the alleged debt.  That's the claim.

MS. FAULKNER:  That's right.  And that is because they did not contain the Miller v. McCalla language.

THE COURT:  Right.  According to the plaintiff

22

when the amount of a debt varies from day-to-day, the debt
collector must use the so-called safe harbor language
recommended by the Seventh Circuit in the Miller case.

     MS. FAULKNER:  Right.

     THE COURT:  And if that doesn't happen, then the
act is violated in the plaintiff's view, correct?

     MS. FAULKNER:  Yes.

     THE COURT:  Okay.  Thus the plaintiff says the
first letter violated the act because it didn't contain
Miller's safe harbor language.  Similarly, according to
the plaintiff, the second letter violated the act because
it omitted that language, is that right?

     MS. FAULKNER:  No, no, Your Honor.  That
language had to be only in the first letter.

     THE COURT:  Okay.  How about the third letter?

     MS. FAULKNER:  The other two letters are in the
case only because they showed that in fact interest was
being added.  The first letter is the violation.

     THE COURT:  I see.

     So I need to focus on the first letter and the
omission of the safe harbor language recommended in
Miller.

     MS. FAULKNER:  Right.  And followed in this
district by Judge Arterton in I think two cases, Dragon
and Goins.

THE COURT: If the statute requires the debt collector to accurately disclose the correct amount due on the alleged debt, if that is what the statute requires, how does this letter of June 24, 2007, violate that requirement? Does it not accurately disclose the correct amount due?

MS. FAULKNER: Yes. Current balance. But it does not say that this will be increased.

THE COURT: Is there anything in the statute that says the debt collector is required to inform the consumer that the balance will increase over time?

MS. FAULKNER: No. The statute requires them to give an accurate disclosure of the debt, and Miller says if the balance is going to increase, even if you've given the correct balance today, you've got to let the debtor know.

THE COURT: That's Miller's gloss on the statute, shall we say?

MR. LEGHORN: I don't even think that's accurate, Your Honor, because in Miller --

THE COURT: Who is speaking, please?

MR. LEGHORN: Excuse me, this is Tom Leghorn.

In the Miller case, they did not give the total amount due. They said what the principal was and said other charges will be added to this as well as accrued

interest and you'll need to call to verify it.

So it was totally different from this situation. There was not a statement of current balance or total due in the Miller case.

MR. FRANCIS:  Your Honor, this is Jim Francis also with Ms. Faulkner for the plaintiff.  If I could just be heard briefly?

I don't think that Miller is a gloss on the statute.  I think what it does, is the Seventh Circuit in counting on for the requirement under the FDCPA for a debt collector to state the amount of a debt in the real world of when letters are sent out.  Because the idea is that someone is supposed to know:  What do I owe?  And if I get a letter five days later and interest has accrued on a five-day basis, that doesn't tell me what I owe.  So the Seventh Circuit said in the recognition of the real world and that statutory obligation:  Here is how a debt collector can deal with that situation when there's a delay in sending a -- where there's daily interest and there's a three- or four- or five-day mailing time.

I don't think it's a gloss on the statute.  I think it's an application of the statute in the real world.

And the fact of the matter here is, as Ms. Faulkner alluded to earlier, the testimony is clear

25

that regardless of the fact that the defendants made a
settlement offer for a lesser amount, the settlement offer
has no bearing on the violation at issue here.  Because
the testimony is clear from defendant's corporate
representative that if Mr. Jones had called up and asked,
what is my balance, he would not be given the number in
the letter, he would be given a different number.  That is
clear, that if he had asked -- I have the testimony here,
I can give page and line number right now.

So that is exactly what Miller and the Seventh
Circuit was trying to avoid, was that situation.

MR. LEGHORN:  Your Honor, the Seventh Circuit
has addressed this exact issue subsequent to the Miller
case by the case we cite in our papers, Wahl v. Midland
Credit.  And in that situation -- and that's cited
extensively in our papers -- the Seventh Circuit did not
state that the Miller language was necessary in a
situation which is before this Court and granted -- upheld
the grant of judgment to Midland Credit that a very
similar, if not almost exactly the same letter had not
violated the FDCPA for the very reasons we're discussing;
that the letter did accurately state what the outstanding
balance was as the date of that letter.

MS. FAULKNER:  I have to object to that
characterization.  The Wahl case involved pre-purchase

interest being disclosed as principal.  It had nothing to
do with post-purchase interest.

THE COURT:  Well, from what I'm hearing, the
claim that's being presented to me now is that in a case
like this in which the debt buyer offers a settlement
which has a deadline attached to it, although the terms of
that offer may be crystal clear, unless the debt buyer
discloses that interest is running in the meantime, the
statute is violated because the debt buyer has failed to
provide an accurate statement of the amount of the debt.

Is that the claim that's being made here?

MS. FAULKNER:  Yes, Your Honor.

THE COURT:  Has that claim been briefed?

MS. FAULKNER:  Yes, Your Honor.

THE COURT:  You don't need anymore briefing on
this?

MS. FAULKNER:  Well, the only thing that I would
supplement is that the position of the industry, the
American Collectors Association, is that in these
circumstances the safe harbor language should be in the
letter.  But I don't think other than that we would need
any additional briefing.

THE COURT:  So the industry itself says that
when you're a debt buyer and you're making an offer of
settlement like this, the best practice is to include the

safe harbor language?

        MS. FAULKNER:  Right.

        MR. LEGHORN:  And I would object to that, Your

Honor.  That may be the view of a certain segment as a

safe harbor to prevent the very types of actions we're in

now.  But that is not something that has been espoused by

courts as being what the legal standard is.

        So I would object to that, Your Honor.

        THE COURT:  Okay.

        Is there any downside to including the safe

harbor language in?  The Pifko case mentioned earlier, the

district court seemed to suggest that including additional

language could itself violate the FDCPA.

        MR. LEGHORN:  And, Your Honor, I think that's

accurate in terms of -- I think it's fair to say that with

the many generations of litigation, all of us have lived

through in, you know, FDCPA, that if there's one

take-away, it's that to try to make these letters as

accurate as to the point without putting too many layers

back on the onion, that may be in an attempt to aid, could

be read by another as confusing or misleading.

        So the fact that the language may have been

required by the Seventh Circuit in a Miller situation but

not in the Wahl situation, you know, I would urge that it

is not as simple a thing as adding it in in every case

just to be careful.  I think there are certainly instances
where I could see someone saying you're misleading and
confusing the debtor.

        THE COURT:  Okay.

        MS. FAULKNER:  In addition, Your Honor, if there
is additional language that the amount may increase and in
fact the debt collector does not add interest, that would
certainly be deceptive, but that is not the case here.

        THE COURT:  All right.  Then being guided by
your comments today, I will go back and review the law,
paying particular attention to the first letter and
recognizing that the other letters are before me only for
evidentiary value not because they themselves are alleged
to have violated the statute.

        Thank you very much for your time this morning.
We'll have a decision for you soon.

        MR. LEGHORN:  Thank you very much, Your Honor.

        MS. FAULKNER:  Thank you, Your Honor.

        (Proceedings adjourned at 12:10 p.m.)

C E R T I F I C A T E


In Re: JONES  vs. MIDLAND



      I, Darlene A. Warner, RDR-CRR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.



/s/_____

DARLENE A. WARNER, RDR-CRR
Official Court Reporter
450 Main Street, Room #223
Hartford, Connecticut 06103
(860) 547-0580