UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - x
                              :
KENNETH W. JONES              :   No. 3:08CV802(RNC)
                              :
              Plaintiff,      :
                              :
         vs                   :
                              :
MIDLAND FUNDING, LLC, ET AL   :
                              :   HARTFORD, CONNECTICUT
              Defendants.     :   OCTOBER 7, 2010
                              :
- - - - - - - - - - - - - - - x


ORAL ARGUMENT



    BEFORE:

        HON. ROBERT N. CHATIGNY, U.S.D.J.









                              Darlene A. Warner, RDR, CRR
                              Official Court Reporter

```
 1    APPEARANCES:

 2        FOR THE PLAINTIFF:

 3            LAW OFFICES OF JOANNE FAULKNER
                  123 Avon Street
 4                New Haven, Connecticut 06511-2422
            BY:  JOANNE S. FAULKNER, ESQ.
 5
                  FRANCIS & MAILMAN, P.C.
 6                Land Title Building, 19th Floor
                  100 South Broad Street
 7                Philadelphia, Pennsylvania 19103
            BY:  JAMES A. FRANCIS, ESQ.
 8
          FOR THE DEFENDANTS:
 9
              WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER -NY
10                3 Gannett Drive
                  White Plains, New York 10604
11            BY:  THOMAS A. LEGHORN, ESQ.

12            WILSON, ELSER, MOSKOWITZ, EDELMAN & Dicker -CT
                  1010 Washington Boulevard
13                Stamford, Connecticut 06901
              BY:  JILL E. ALWARD, ESQ.
14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                            10:00 A.M.

2

3                THE COURT:  Good morning.  Would you please

4    state your appearances.

5                MR. FRANCIS:  Jim Francis for the plaintiff,

6    Your Honor.

7                MS. FAULKNER:  Joanne Faulkner for the

8    plaintiff.

9                MR. LEGHORN:  Thomas Leghorn for the defendants.

10                MS. ALWARD:  Jill Alward for the defendants.

11                THE COURT:  Thank you.

12                This is argument on the motion for

13    reconsideration.  Mr. Leghorn, will you be doing the

14    presentation?

15                MR. LEGHORN:  Yes, Your Honor.

16                THE COURT:  You're welcome to proceed.

17                MR. LEGHORN:  Shall I use the podium, Your

18    Honor?

19                THE COURT:  Whichever you prefer is fine with

20    me.

21                MR. LEGHORN:  I'm old school, so podium works

22    best for me.

23                THE COURT:  Okay.

24                MR. LEGHORN:  Thank you, Your Honor, and good

25    morning, Your Honor.
```

```
1              THE COURT:  Good morning.

2              MR. LEGHORN:  As you know, we are here on

3    defendants' motion for reconsideration of your

4    December 16, 2010 decision which had granted plaintiffs

5    partial summary judgment on their FDCPA claim.

6              It is respectfully submitted that the decision

7    erred in following the decision out of the Seventh Circuit

8    in the case of Miller.  When in fact the more appropriate

9    and persuasive case that fit the facts of our present

10   situation was the decision from that same circuit that

11   followed Miller by nine years, the Wahl v. Midland case.

12             THE COURT:  Mr. Leghorn, the problem I have with

13   Wahl as a precedent for your view of this case is the

14   absence of any discussion in Wahl regarding the letter

15   that omitted information concerning interest.

16             MR. LEGHORN:  And I think, Your Honor, the

17   reason it was omitted was because it didn't come into

18   play.  The issue was whether the issue in Wahl and a whole

19   litany of cases that we have discussed in your decision

20   and our respective briefs, is whether the information that

21   was within the letter complied with the FDCPA 1692g(a)(1)

22   in setting forth the amount of the debt.  That is what the

23   statute called for.

24             And in the various decisions, the issue was, as

25   plaintiff has framed it and as indicated in your decision,
```

1   is whether it was a violation of that provision by failing

2   to alert the debtor to the fact that over the passage of

3   time interest would continue to accrue.  And I think

4   there's a lot to be said by the fact that Wahl did not

5   address the absence of the interest provision in it.

6   Because it was dealing with the single issue:  Did the

7   letter comport with the mandate of the FDCPA?  And it did.

8   It set forth -- the debtor clearly understood the amount

9   due and when it was payable.

10          Whereas in Miller it was a totally different

11  scenario.  It was a debt that was based upon a debt that

12  was secured by real property.  As with most mortgages or

13  home equity loans, there is daily accruing interest and

14  the number will change on a daily basis.  And rather --

15  and in Miller, the creditor there tried to circumvent the

16  need to set forth a specific number on a specific date and

17  took the approach of:  You can call for the number.  And

18  that totally missed the boat.

19          And that is why in Miller the Court found that

20  it was a violation because the debtor had never been told

21  what the amount due was as of a certain date, and it was

22  confusion.  And that's why in Miller the Court, the

23  Seventh Circuit offered its safe harbor language, that in

24  those situations there is a method by which you can do it.

25          Interestingly, the Seventh Circuit in dealing

1    with the Wahl situation where there was clearly interest

2    accruing even though the Wahl decision did not deal with

3    the mentioning of the interest, did not offer up the need

4    for a safe harbor in that type of situation.

5          THE COURT:  What is your understanding of the

6    purpose of this particular requirement?  That the debt

7    collector state the amount of the debt?

8          MR. LEGHORN:  I think you really have to go all

9    the way back.  The original intent of the statute was to

10   eliminate confusing, harassing, inappropriate debt

11   collection activities and the validation notice, which is

12   the 1692g section, is intended to set forth in clear and

13   concise terms the basic information any debtor needs to

14   know about the debt:  The creditor, the amount of the

15   debt, their rights under the statute to seek validation.

16   That is what's in there.  It's -- it's a litany of the

17   individual elements that a validation letter is required

18   to have as a bare minimum.

19         THE COURT:  Are you aware whether there is any

20   legislative history bearing on this particular

21   requirement?  That the amount of the debt be stated?

22         MR. LEGHORN:  Only in the most general terms.

23         In many cases I've had occasion to read through

24   reams of the legislative history, and as I stand here

25   before you, I cannot recall having read anything that

1    indicated something within the legislative history other

2    than the need to give the debtor the definitive statement

3    as to what the amount was due and who was seeking it, and

4    the items are there.  I don't recall seeing anything with

5    respect to accruing interest.

6              THE COURT:  Okay.  So having looked through the

7    legislative history from time to time in the past, as you

8    stand here today, you don't remember any discussion of the

9    question whether the debt collector should be obliged to

10   disclose information about interest?  It just wasn't

11   there?

12             MR. LEGHORN:  Your Honor, I don't want to make

13   any misrepresentations; but yes, from my personal

14   recollection, I do not recall that in the discussion of

15   that particular section of the FDCPA legislative history.

16             THE COURT:  In your reply brief you state that

17   there is no evidence that Midland Funding took part in

18   drafting or mailing the letter of June 24.

19             MR. LEGHORN:  Yes, Your Honor.

20             What is Midland Funding?  Midland Funding and

21   Midland Credit are two subsidiaries of Encore Capital.

22   It's at the top.  Encore capital is the publicly traded

23   entity that directly or indirectly owns each of those

24   entities.  And the company is involved, as we're before

25   the Court here, in the purchase of debt.  And when they

1    purchase portfolios of debt, they'll set up holding

2    companies to hold the different portfolios of a certain

3    amount, and then they move on to another one.

4         Midland Funding is one of those holding

5    companies.  The evidence in this case, taken through the

6    depositions of the respective representatives indicate

7    there are no employees whatsoever of Midland Funding.

8         When the portfolios are purchased, they are

9    immediately assigned through a servicing agreement to

10   Midland Credit Management to do the collection activity,

11   and when necessary Midland Credit is authorized to retain

12   and direct counsel to litigate the debts.  So other than

13   purchasing the debt and immediately transferring it to

14   Midland Credit, there is no activity.

15        Yes, Midland Funding is listed in the validation

16   notice and it is the true party interest as the owner of

17   it, but other than that, they played no role in the

18   preparation of the letters at issue or in directing that

19   they be issued.  That was done exclusively by Midland

20   Credit Management.

21        THE COURT:  What is the legal significance of

22   that?

23        MR. LEGHORN:  Well, the legal significance of

24   that, Your Honor, is that if the letter is indeed a

25   violation, it's a single violation and it was carried out

1    by one defendant.  It was not carried out by two

2    defendants.  It was done in the name of that party,

3    Midland Funding, but it was done by Midland Credit

4    Management.

5             And really the significance would come in in the

6    context of damages, Your Honor, because under the FDCPA,

7    there is a -- the damages under a class action, the lesser

8    of 1 percent, or $500,000, 1 percent of its net worth.

9    And an argument has been made in a number of cases that if

10   you can show separate acts by the different defendants,

11   potentially you can multiply those damages.

12            Our argument would be here that:

13            One, Midland Funding is not responsible or could

14   not be liable for the contents of the letter because it

15   was done by Midland Credit Management and not issued by

16   Midland Funding;

17            But even if the Court was to hold that Midland

18   Funding was vicariously liable for the acts of its agent,

19   our argument would still be that it's only one violation

20   and really should only trigger one set of damages.

21            And this is more appropriate in a case like here

22   where the net worth of the company is contained on a

23   consolidated balance sheet and if there aren't separate

24   true net worths for each company, but it's a consolidated

25   balance sheet.

1           So that's the significance, Your Honor.

2           THE COURT:  Okay.

3           MR. LEGHORN:  And I was discussing, Your Honor,

4  the -- in the case -- the reason we believe that the Wahl

5  case is more appropriate than the Miller case, is in the

6  case before you, Your Honor, there's only one letter at

7  issue, Midland's additional validation letter, June 24,

8  2007.  That letter clearly set forth the current balance

9  of debt being $2,095.06.  This is precisely what is

10  mandated by the FDCPA in Section 1692g(a)(1).

11          The letter also offered the debtor the

12  opportunity to sell the debt at a 10 percent discount if

13  it was paid by August 8, 2007.  The letter contained a

14  tear-off section at the bottom to be used for submitting

15  payment and it listed the balance at the same, $2,095.06.

16          The plaintiff has -- as we know, the plaintiff

17  has alleged that it was a violation because

18  notwithstanding given the exact debt due, it failed to

19  indicate that the -- that interest would continue to

20  accrue.  Here we have a situation where not only was the

21  debtor given the precise amount due, but the debtor was

22  given approximately six or seven weeks in which they could

23  have paid it and it wasn't going to change.

24          The evidence in this case also showed that had a

25  payment for that amount showed up 15, 20, 30 days later,

1    they would have accepted it and canceled out the debt.

2           So this wasn't a situation of a moving target

3    where a debtor would be confused as to what debt it would

4    take to clear their account.

5           In the Wahl case, which I noted is by the same

6    court as Miller but follows by nine years, I think that's

7    significant, because if the Seventh Circuit had the intent

8    of broadening its decision from Miller in Wahl, it would

9    have made note of that, but it was different situations

10   and it came to a different result.

11          In that situation, Midland, the same party I'm

12   here before Your Honor with, was pursuing a collection of

13   debt they had purchased from BP Amoco.  They sent us a

14   collection letter in that matter in February 2005 seeking

15   a specific amount and similarly offered a discount.  In

16   that situation it was a 25 percent discount.

17          In the Wahl case, the debtor similarly did not

18   avail themselves of the discount and made no payment

19   whatsoever, and a second letter went forward with the

20   increase in the amount.

21          The Wahl court followed its earlier post-Miller

22   decision in Barnes v. Advanced Call, which it held that

23   the FDCPA was not violated because the amount of the debt

24   was accurately stated in the letter.  The Seventh Circuit

25   characterized the allegations of Wahl as hypertechnical at

1    best and flawed from beginning to end.  And maybe that's

2    why, Your Honor, the Wahl court did not mention the

3    interest.  It was focused solely upon the fact that the

4    letter had complied with the statute.  The amount due was

5    given.

6              The letter in Miller never set forth the amount

7    due of the debt as of any date, and there are a couple --

8    in your decision, Your Honor, you indicated were relying

9    upon Miller and a few other cases, one of them is Dragon.

10   That is distinguishable as well.  That letter did not

11   state a date by which the balance was due and similarly it

12   was subject to adjustment, not the case before us.

13             In the Smith case, the demand was a payment of

14   amount plus accrued interest.  It did not give a date when

15   it was due.  Once again, a moving number without a due

16   date.

17             And your decision also referenced Jackson v.

18   Aman, here the demand was for a sum plus accruing

19   interest.  Once again, not a fixed number.  The court said

20   Miller safe harbor language was not required.  What the

21   defendant could do is state the total amount due to them,

22   and that's what Midland did in this case.

23             Additionally, through our oral argument, Your

24   Honor, we had a significant discussion of the Adlam

25   decision from the Southern District of New York.  In that

1    case reported violation of the FDCPA was precisely what

2    this Court summarized as the plaintiff's claim that the

3    letter failed to advise to the debtor that the debt would

4    increase over time.

5            As Judge Scheindlin noted, even the most

6    unsophisticated consumer would understand that credit card

7    debt accrues interest.  Judge Scheindlin held, as the Wahl

8    court had, that all 1692g requires is that the validation

9    letter state the amount of the debt.  The letter before

10   the Court did precisely that.

11           There is -- another issue we raised in the

12   motion for reconsideration, Your Honor, is that even if

13   the Court was not persuaded by the defendants to grant the

14   defendants' summary judgment, the plaintiffs fell short in

15   their burden to receive summary judgment in a case such as

16   this.  And the failure is the failure of the plaintiff to

17   produce any extrinsic evidence to defeat the defendants'

18   motion despite no clear violation of the FDCPA.

19           Here where it is on its face in compliance with

20   the FDCPA and the plaintiff is arguing an expansion of

21   what is under clear letter of the law, the burden falls

22   upon the plaintiff to put forward extrinsic evidence that

23   not only this particular plaintiff but the consumer public

24   in general would be confused by this fact.  The

25   plaintiffs' motion was devoid of any such evidence or even

1        a supporting affidavit from an expert on the point.

2                Your Honor, there were a number of cases -- let

3        me just back up a second, Your Honor.

4                There was a supplemental submission by

5        plaintiffs of authority on Friday afternoon.

6        Unfortunately I was out of the office on Friday.  I've

7        done my best over the weekend to read through them.  If

8        there are any of those cases you'd like me to address,

9        I'll do my best, if not, and the Court wishes us to

10       address them, I would request a brief period of time to

11       put in a writing on it.  But -- but I can try to address

12       them at this point.

13               Similarly the final point, Your Honor, is that

14       if Your Honor is inclined to maintain your original

15       decision of the grant of summary judgment to the

16       plaintiff, I think this is a decision of significant

17       importance in that it goes contrary to the Seventh

18       Circuit's decision, that I would seek the opportunity to

19       have the question certified for an immediate appeal to the

20       Second Circuit.

21               Other than any questions you might have, Your

22       Honor, that's the gist of my argument.

23               THE COURT:  All right.

24               With regard too extrinsic evidence, have you

25       seen cases where the court required the consumer to

1    produce extrinsic evidence?

2              MR. LEGHORN:  There is -- seems we're stuck in

3    the Seventh Circuit, Your Honor.

4              We cite a case Pettit v. Retrieval Masters, 211

5    F.3d 1057, Seventh Circuit, 2000.  It's at the summary

6    judgment stage, the FDCPA plaintiff must do more than

7    merely speculate how a naive debtor would interpret the

8    letter.

9              And there are other cases.

10             Duncan v. Equifax is another one we've cited.

11             There are cases we've cited in our brief, Your

12   Honor.

13             THE COURT:  You had not personally had that

14   experience?

15             MR. LEGHORN:  I have not been involved in one of

16   those cases, Your Honor.  The cases are usually, that I've

17   been involved in, are usually more fact driven as opposed

18   to a legal issue such as this.

19             THE COURT:  Your position is that in a situation

20   like the one we have here where some courts say even the

21   least sophisticated consumer would know that interest

22   accrues on debt and others say that, no, information

23   concerning interest needs to be disclosed in order to

24   avoid misleading the least sophisticated consumer, in such

25   a scenario it's incumbent on the plaintiff to offer

1    extrinsic evidence on the point.

2              MR. LEGHORN:  I would say yes, Your Honor,

3    because going through the line of cases is -- those cases

4    which have found a violation, they all differ from the

5    case before Your Honor as well, as differ from the Wahl

6    case, in that they all did something beyond just state the

7    amount of the debt.  They did something more in terms of

8    listing the interest in a confusing manner or whatever.

9              Unfortunately, it would appear that the FDCPA

10   bar, in trying to press the limits of the FDCPA, have got

11   creditors trying to insulate themselves as best as

12   possible.  And sometimes what they do in terms of trying

13   to protect themselves by giving more information actually

14   leads to the confusion that they then find themselves

15   before the court.

16             I believe all the cases that are cited that go

17   against the creditor had something more to it.  And all

18   the cases that dealt with interest had something in it in

19   which clearly from its face you could see that there were

20   different numbers that didn't match up or it just confused

21   what was due and when it was due.

22             Actually eliminating that and just, as in this

23   case in a later letter attaching a statement showing the

24   interest rate and the components of the interest, is the

25   better approach to go.

1          Even in those cases where it's -- the creditors

2    attacked the -- when they split the amount due, it still

3    required that they have to accurately reflect what the

4    amount was due, but they want to put the interest

5    component in there, it has to be accurate of what the base

6    was and what the interest component is.

7          But there, all it's doing is similarly what's

8    the amount due, it's breaking it apart.  Here rather than

9    breaking it apart, it was telling the debtor the exact

10   same thing on the morning of this day in 2007, this is the

11   total amount due.  And if they paid that off it would have

12   been the same.  Whether they paid off 60 percent of X plus

13   40 percent being the interest, they still had the same

14   total number.

15         So those cases, I believe, it's not significant.

16   It would not impact this case for the failure to set forth

17   the interest component.  They comply with the statute.

18         THE COURT:  In this case the letter went beyond

19   simply stating the amount due as of the date the letter

20   was sent in that the letter proposed a settlement at a

21   discount.

22         MR. LEGHORN:  It did.

23         THE COURT:  In your view, that actually

24   strengthens the case for your client because it gave the

25   debtor a fixed period of time in which to pay the amount

1    and be done so you didn't have a moving target?

2          MR. LEGHORN:  I believe it did, Your Honor,

3    because not only did the debtor know what the total amount

4    due was, they knew that they had approximately a six or

5    seven week period in which a discounted number could be

6    paid in total satisfaction of the debt.  But even so, on

7    the letter, there was a tear off portion that contained

8    the amount due plus the amount from the discount to be

9    paid off.  So it did strengthen it.

10          It would be like the debtor got the credit card

11    statement in the beginning for which this unpaid debt had

12    accrued.  They have amount due, minimum amount due, plus

13    the total balance if they're paying it off over time.

14    That is not any violation of those statements.  And

15    similarly here, they have the total amount as well as what

16    the discounted amount was.

17          In Wahl, it was a deeper discount.  It was

18    25 percent, and the Court did not find that that was in

19    any way a violation or misleading.

20          THE COURT:  At the oral argument, plaintiff's

21    counsel explained that the problem here is the debtor's

22    inability to know what the amount would be if he didn't

23    take advantage of the settlement offer.

24          MR. LEGHORN:  I don't agree with that statement,

25    Your Honor, because under the letter that the debtor

```
1    received, they had the full amount that was due and the
2    amount that would take them to that full time period.  And
3    from the discovery plaintiff took of my clients,
4    plaintiffs also learned that they would have been given a
5    grace period of 15, 20, 30 days beyond that to take
6    advantage of that.
7              If you take it to the level that plaintiff tried
8    to imply during oral argument, it is exactly the position
9    that they're taking here, that there's an obligation not
10   written into the FDCPA to not only give the exact amount,
11   to pay the reduced amount, but also to say "and the
12   ultimate number will increase due to running of interest."
13             And that's where we differ, Your Honor.  We do
14   not agree that the statute says that nor do we believe
15   that the litany of cases cited within the briefs support
16   that position as well under these circumstances.
17             THE COURT:  Thank you.
18             MR. LEGHORN:  Thank you, Your Honor.
19             MR. FRANCIS:  Good morning, Your Honor.  Jim
20   Francis for the plaintiff.
21             THE COURT:  Good morning.
22             MR. FRANCIS:  Your Honor, I want to start with
23   why we're here today, and that is a motion for
24   reconsideration and the standard for a motion for
25   reconsideration.  Because we are not back two years ago
```

1    before this Court arguing summary judgment, the standard

2    for reconsideration, as this Court knows, is a strict

3    standard.  And the defendant does not come close to

4    meeting that standard in this case.

5         The defendant has not identified any new

6    evidence of record, has not identified any intervening

7    change in the law, whether it be an amendment to the FDCPA

8    or the Second Circuit's decisions regarding the FDCPA, and

9    the defendant has not identify any clearly erroneous

10   ruling of law that this Court and Your Honor made in its

11   December 2010 ruling regarding summary judgment.

12        What defendant seeks to do is simply reargue and

13   say can we have another shot and take another bite at the

14   apple on this?  And the case law is very, very clear that

15   a motion for reconsideration is not to be used for a de

16   novo review of a previous ruling, it's not to be used for

17   a defendant to take another bite at an apple of an

18   argument that it made and lost or plaintiff made and lost,

19   and it's not to be used as an opportunity for a Court to

20   simply second guess its previous ruling.  There has to be

21   something clearly erroneous.

22        As Your Honor noted in the decision, there was

23   an extensive line of case law which supported this Court's

24   ruling, the Seventh Circuit's decision in Miller, the two

25   decisions from this very district in Goins and Dragon,

1   cases from Judge Arterton, supported this Court's ruling

2   on summary judgment.

3            Let's assume for argument sake there may have

4   been one or two district court cases that didn't quite

5   squarely agree with that line of reasoning, that is not a

6   basis for this Court to reverse itself and/or grant the

7   defendants' motion here.  The fact of the matter is the

8   Court's ruling was grounded in circuit and district court

9   case law on the very issue.

10           So I think Mr. Leghorn was very quick to reargue

11  the Wahl case and the summary judgment arguments that were

12  before this Court.  He did not once argue why this -- the

13  defendant should be granted a motion for reconsideration

14  in this instance.

15           So I would argue to the Court that they're not

16  close to the very high strict standard for a motion for

17  reconsideration.

18           Some of the other arguments that Mr. Leghorn

19  made I don't think are before this Court either, okay?

20  Such as whether or not Midland Funding is a debt buyer and

21  is liable for the actions of Midland Credit Management.  I

22  just went back and looked at his motion for

23  reconsideration, I don't see that argument flushed out

24  there at all.  I would say it's waived or it's not part of

25  this argument.

1           Regardless, for the Court's purposes, I will

2    point out that in plaintiff's summary judgment briefing,

3    we did cite to case law.  In fact, Midland Funding v.

4    Brent, the Brent decision, which -- for the proposition

5    that a debt buyer where it buys a debt for the purpose of

6    collecting upon it and then has a holding company that

7    sends the letter out, in that instance, both companies are

8    liable as debt collectors for a violation to the

9    plaintiff.

10          So I think in this case there is no question

11   that both defendants are properly before this Court and

12   have summary judgment rendered against them.

13          There's also a case from the Third Circuit

14   called Pollice which also holds develop squarely that in a

15   case where there's a debt buyer and the debt buyer that

16   uses a holding company to send letters or make

17   communications, both of those companies are debt

18   collectors under the statute sufficient for the purpose of

19   conferring liability on both of them for a particular

20   communication that violates the statute.

21          As I indicated, this Court was solid in its

22   ruling in relying upon the cases of Miller, Goins, Dragon

23   and the other cases that were cited.  Nothing has changed

24   since this Court's ruling to alter the law or alter the

25   landscape at all.

1            To the extent that Mr. Leghorn reargued his

2    summary judgment briefing, I would just like to take a

3    brief opportunity to also rebut some of the things that he

4    stated.

5            As this Court pointed out and as we argued

6    earlier in the litigation, what's very relevant here was

7    that this is daily -- this is a case of daily interest,

8    okay?

9            Where interest is accruing daily, as in this

10   case, the June 24th letter at issue failed to clearly and

11   effectively communicate the amount of the debt as required

12   by Section 1692g of the FDCPA.  The fact that the debt

13   changed daily was very relevant for this Court's

14   consideration and ruling because, by definition or by

15   operation of math, for Mr. Jones and each class member,

16   the minute they received the letter, the letter was wrong.

17   It did not communicate to them the amount of the debt.

18   That is where we start.  We start with Section 1692g's

19   language, none of the class members, including Mr. Jones,

20   received a letter which accurately conveyed at the time

21   they received it the amount of the debt, and that's

22   because of the assessment of daily interest in this case.

23            THE COURT:  What is the measuring point?  The

24   moment the letter is sent or the moment the letter is

25   received?

```
 1            MR. FRANCIS:  Well, I think the case law, Your
 2   Honor, is clear that the -- you assess whether the letter
 3   is accurate at the time that it is sent.  I think that's
 4   clear.  But that has to contemplate what the operation is,
 5   right?  So it's a communication that gets sent from a debt
 6   collector that is made to a consumer.
 7            If that communication is by nature going to be
 8   false by the time it gets there, then I would say that the
 9   debt collector knows that at the time and that
10   communication is false at the time it is uttered.
11            That's why recognizing that problem in the real
12   world is why Judge Posner in Miller created the safe
13   harbor language, because he understood, and the Seventh
14   Circuit understood, and Judge Arterton understood, that,
15   yeah, it's a moving target when it's daily interest.  But
16   that's why it's important for the debt collector to
17   disclose that in advance sod the consumer is aware of that
18   moving target because it is otherwise false.
19            And I -- I guess for lack of a better way to
20   describe it, I think it's been misconstrued a little bit
21   in some of the briefing here.  The violation isn't the
22   failure to include the safe harbor language of Miller, the
23   violation is failing to state the amount of the debt
24   correctly and clearly and effectively.
25            The safe harbor language is the way by which a
```

1    debt collector can avoid making that violation.

2         I just think that's important to note.  We are

3    not arguing that anywhere in the plain language of the

4    FDCPA there is a requirement to use that language.  It's a

5    way to avoid liability, it's a safe harbor provision, that

6    the defendant had available to it and chose not to use

7    that for whatever reason.

8         But the violation is sending a communication

9    which the minute it is received by the consumer, and the

10   defendant knows that, it's a false communication.  And

11   here, when Mr. Jones received this letter, the amount

12   stated in the letter was incorrect.  That wasn't the

13   amount that he owed.

14        And as I indicated on the record during our

15   telephone argument on the summary judgment motions, and I

16   think as the Court alluded to earlier, there was clear

17   deposition testimony that if any consumer, any member of

18   this class, some may have, called up the defendant and

19   asked, what do I owe?  What is the amount that I owe?

20   What is my balance?  The balance that would have been

21   stated would not have been the current balance listed on

22   the June 24th letter.  It would have been an amount that

23   their computer computed as to the number of days that

24   interest had accrued plus that amount.

25        So that was very consistent with our theory of

1    this case.

2           THE COURT:  Suppose the letter said, under the

3    statute, we must inform you of the amount of the debt at

4    the time we send this letter.  At this moment the amount

5    of the debt is X, period, nothing further.  Would that

6    violate the statute?

7           MR. FRANCIS:  I think it would violate the

8    statute under the -- to the DeSantis v. Computer Credit

9    approach.  It doesn't just have to technically state the

10   debt, it has to do so clearly and effectively.  And I

11   don't think that would communicate the amount of the debt

12   clearly and effectively when there is daily interest

13   accruing and the consumer doesn't know that.

14          So the consumer isn't -- when Judge Posner

15   indicated, and Your Honor was asking about legislative

16   history, I think you posted that question to Mr. Leghorn

17   regarding 1692g requirement and Judge Posner indicated,

18   albeit in a very summary fashion, that the purpose of this

19   section of the FDCPA was to prevent a consumer to have to

20   guess, what do I owe?  To call somebody up on the phone or

21   call the debt collector's number, which Judge Posner

22   indicated it can be a very vexatious process, get somebody

23   on the phone and try to wrangle with them and figure out

24   what they owe.  That is one of the purposes of this

25   section, to avoid that.

1          And that, if Mr. Jones wanted to find out how

2    much he owed, he would have had to call up and ask

3    somebody and go through the very process that Judge Posner

4    said the section -- that section of the FDCPA was designed

5    to prevent.

6          THE COURT:  On that view, it would be necessary

7    for the debt collector to provide the debtor with

8    sufficient information to enable the debtor to calculate

9    the amount due at any given time, whether it was a week

10   after the letter was sent or a month after the letter was

11   sent?

12         MR. FRANCIS:  Well, I think that the Court's

13   holding correctly places upon the debt collector the duty

14   to disclose that interest is accruing and if it knows what

15   that amount is so the debtor can be in a position to know,

16   what do I owe, at least that minimal amount of

17   information, I believe that would be required in order to

18   satisfy the statute.

19         THE COURT:  And you justify that by reference to

20   the requirement that the communication be clear and

21   effective?

22         MR. FRANCIS:  That's correct, Your Honor.  And

23   also in our circuit or in this circuit, one of the ways

24   that -- one of the tests to determine whether or not a

25   collection letter is false or deceptive is whether or not

1    it's capable of two meanings, one of which is incorrect.

2             Well, defendants' letter, the June 24th letter

3    at issue in this case, was clearly capable by the least

4    sophisticated consumer, objectively interpreting it, of

5    two meanings, one was the current balance was going to

6    stay the same, that even after a defendants' settlement

7    offer expired, that amount would not change, it would stay

8    the same.  The other possibility is current balance means

9    maybe it is a moving target, but I don't know when it's

10   changing, I don't know how long it's good for, I don't

11   know whether it's daily, monthly, it could be moving, but

12   I don't know when.  There are two different views of that.

13   The fact that the letter is capable of two different

14   interpretations, one of which was false, right?

15            The first interpretation I mentioned would be

16   false, that it was a static balance.  That wasn't correct.

17   We know now and we know from discovery that it wasn't a

18   static amount.  The fact that the letter could be

19   communicated to have a static balance indicates that it's

20   a -- at least under the two or more reading rule -- that

21   the letter did not comply with the FDCPA.

22            THE COURT:  In the ruling I noted that you

23   weren't relying on Section 1692e or f.

24            MR. FRANCIS:  That's correct.  And I think that

25   actually dovetails into what I wanted to address next,

1    which was Wahl, because it's a big distinction.

2              As Your Honor just noted, the section at issue

3    here is the Section 1692g section of the FDCPA.  That's a

4    very important and central section.  That is a part of the

5    act which relates to the first letters or first

6    communications that are sent, okay?  Those requirements

7    are not required for other subsequent letters.

8              The Wahl case is distinguishable among other

9    reasons because it does not even address Section 1692g.

10   It's dealing with another section of the FDCPA.

11             As Your Honor pointed out, in Wahl, the

12   plaintiff did not proceed on any violations for the first

13   letter.  So Wahl is completely inapposite because it

14   doesn't deal with the first letter, it doesn't deal with

15   the section in our case which addresses the first

16   communications the debt collectors send.  And for other

17   reasons, or in addition to that, Wahl was dealing with a

18   disclosure of prepurchase interest, not future, post

19   purchase interest.  And the letter in Wahl, the letters

20   that were issued before the Court in Wahl actually did

21   have reference to interest.

22             So Wahl is not even close to this case.  It

23   doesn't deal with the section and it doesn't deal with the

24   type of letter involved.

25             So the fact the defendant relies on Wahl in

1    addition to not being binding on this Court, it provides

2    no instruction at all for this Court.

3              THE COURT:  In the Eastern District of

4    Pennsylvania last July in a case called Kimmel, the court

5    said that Dragon was distinguishable because in Kimmel the

6    letter gave the debtor a period of time in which to pay

7    the debt, much as the letter did here, and on that basis

8    the court ruled for the debt collector.

9              MR. FRANCIS:  I'm just pulling up Kimmel now.

10             THE COURT:  And Mr. Leghorn would have me

11   conclude that since there was no moving target here during

12   that period of six weeks plus some grace period, there was

13   no violation of subsection g.  It stated the amount due on

14   the day the letter was sent, and we're agreed that was

15   accurate, and it gave the debtor a period of about six

16   weeks to pay a sum certain, and as it turns out, according

17   to the deposition testimony, the debtor would have had

18   somewhat more time than that.

19             Why isn't that sufficient to satisfy subsection

20   g?

21             MR. FRANCIS:  Well, Your Honor, I think it's

22   insufficient for the reason that I mentioned earlier.  In

23   this case we have proof and we have evidence that if the

24   consumer called up and asked, what do I owe, they would

25   not have been told the number that is in the letter, they

```
 1    would have been told a different figure.

 2              THE COURT:  Let's break it down.

 3              If the consumer called during that six-week

 4    period, it seems to me the answer would be:  If you want

 5    to pay off your debt, pay the amount stated in the letter.

 6    And if the consumer said, well, I'd like to know how much

 7    I will owe if I don't take advantage of this offer, if I

 8    wait, I'd like to know what the amount will be then, are

 9    you saying subsection g would require the debt collector

10    to give them that information as of that date?

11              MR. FRANCIS:  I don't think as of that date.

12    What I'm trying to say is the reason there's a violation

13    here is because the consumer under the law is supposed to

14    know what they owe.

15              THE COURT:  Right.

16              MR. FRANCIS:  Because when a defendant makes an

17    offer, the consumer is supposed to know, is that offer

18    attractive, is it not attractive, is it more or less than

19    what I'm going to owe?  It's designed, clearly as Judge

20    Posner points out, to put the consumer in the position of

21    knowing what they owe.

22              The fact the defendants made a settlement offer

23    here, I think strengthens the theory here.  Because how

24    but for knowing what you actually owe and/or will owe as a

25    consumer can you know whether or not an offer is something
```

```
 1    that's attractive or something that you can take advantage

 2    of?

 3              Or how about if you are a consumer who has

 4    financial issues?  Wouldn't it be useful for that consumer

 5    to know whether or not when the settlement offer expires,

 6    is the amount going to go up or is it going to stay the

 7    same?

 8              So I think the settlement offer context, if

 9    anything, strengthens the theory in this case, not

10    undermines it, as Mr. Leghorn argues.

11              THE COURT:  Does it matter that the merchant

12    told the debtor that interest would accrue on the debt?

13              MR. FRANCIS:  I don't think it -- I don't think

14    that matters to the -- to the extent of whether there's a

15    violation here or not.  I think what it might go to or

16    pertain to is how informed the consumer is.

17              As I argued when we had our telephone argument,

18    it's not just that your debt is accruing interest, is it

19    daily?  Is it monthly?  Is it annually?  And it's not a

20    matter of whether or not consumers know in general that

21    debts accrue interest, because there are debt buyers who

22    buy debts and they don't charge interest.  The interest

23    does not run.  There are debts that have monthly interest.

24              The mere fact that a consumer might know that in

25    the real world a debt or a credit card debt often carries
```

1    interest doesn't mean that they know in this case you're

2    charging interest on me at the same rate that the

3    underlying account was.

4            THE COURT:  This leads to the business about

5    extrinsic evidence.  How is a Court supposed to deal with

6    your proposition?  Am I supposed to take your word for it?

7    Am I supposed to require you to offer evidence?

8            MR. FRANCIS:  Your Honor is not required or is

9    not to require us to produce extrinsic evidence.  We're

10   not in the Seventh Circuit, number one.

11           Number two, the case law that this Court has

12   cited and that the parties have cited makes it very clear

13   that it's -- these letters can be ruled upon at summary

14   judgment by application of an objective standard, the

15   least sophisticated consumer standard.  It is not a

16   standard which requires the introduction of extrinsic

17   evidence and there is no case law in this circuit to

18   require otherwise.

19           THE COURT:  Is that because I am confident what

20   a jury would say?

21           MR. FRANCIS:  It's because the law does not ask

22   you to employ a subjective standard.  It does not ask you

23   to ask about a consumer's subjective intent.  It places

24   upon the Court the obligation to find that objective

25   standard for the least sophisticated consumer and look at

```
1    the cases and look at the case law which defines what that
2    standard is.  It's neither the most gullable consumer or
3    the most sophisticated.
4            There's plenty of cases and case law which
5    describe what that standard is and that is what the
6    Court's role is, is to -- since it's an objective
7    standard -- to apply that standard to letters such as this
8    one.
9            If the law did not require the application of an
10   objective standard, then maybe in a different world that
11   would require -- or at least extrinsic evidence might be
12   germane.  But whereas here it's clear an objective
13   standard and in almost every circuit, in almost every
14   district court case which analyzes it.  There are hundreds
15   and hundreds of cases which discuss it.  I can rattle off
16   my head because I've seen so many of those cases.
17           THE COURT:  Let's hypothesize a situation where
18   Mr. Leghorn comes in with a well done consumer survey
19   showing that every single consumer knew that interest
20   would accrue on this debt, there was no confusion
21   whatsoever, what would be the effect of that?
22           MR. FRANCIS:  Well, I think if he were able to
23   do that, which I doubt that he would be able to do,
24   certainly that might be an affirmative defense that he
25   could argue.  But that certainly wouldn't change the
```

1    burden of proof in terms of the plaintiff.

2            That potentially, just thinking aloud, that

3    could be evidence that he could offer as to his

4    affirmative defense, but he hasn't done so, and that

5    doesn't affect the burden of proof and it doesn't affect

6    the plaintiff's burden.

7            THE COURT:  I ask because I want to be sure I

8    understand your legal position.

9            Why not respond to my question as follows:  It

10   doesn't matter because what this debtor was entitled to

11   under the law was a clear statement of the amount he owed

12   and whether it was accruing interest really is kind of

13   beside the point.  He needed to have clear information on

14   the amount he owed.

15           So why isn't that the correct answer?

16           MR. FRANCIS:  I'm not saying it isn't the

17   correct answer.  I think that is a correct answer to Your

18   Honor's question.

19           THE COURT:  That's what I understand you to be

20   saying.  If this letter accurately stated the amount of

21   the debt the moment it left the debt collector's hands,

22   you contend that it nevertheless violated the law because

23   the debt collector knew that the amount would be different

24   by the time it reached the debtor and they needed to tell

25   the debtor that, right?

1          MR. FRANCIS:  Correct.

2          THE COURT:  What exactly were they supposed to

3     tell them?

4          MR. FRANCIS:  They were supposed to tell the

5     debtor that the -- not only was this debt -- did this debt

6     include a current balance, but that the debt accrued

7     interest, and it accrued interest in an amount of X and/or

8     a -- or at least at a minimum, a variable amount by which

9     the debt could vary.

10         THE COURT:  So they have to disclose that it's

11    accruing interest and they have to disclose the interest

12    rate.

13         MR. FRANCIS:  Well, I would say they have to

14    disclose -- at a minimum they have to disclose that it's

15    accruing interest, and if it's accruing interest on a

16    daily rate, I think it's clear they would have to disclose

17    that as well, because that means every single day it's

18    changing, whereas if it were only a yearly APR, that's a

19    different situation.  We don't have that here.

20         But where it's a daily assessment, then yes,

21    because by operation of when the consumer receives the

22    letter, the amount stated in the letter will never be

23    accurate.

24         So it puts the consumer in charge of being able

25    to find out how much I owe.

1           So the way I -- without me writing a version of

2       Miller or Seventh Circuit safe harbor language, it would

3       need to give the consumer enough for at least him or her

4       to be able to figure out how much they owe.  And if it was

5       a moving target, well then, give them the basis for the --

6       or a formula by which they could at least make some type

7       of calculation as to what they owe so that they're not

8       left in the dark.

9           And what happened here was, given the assessment

10      of daily interest, given the fact that the letter only

11      disclosed a current balance and given the fact that the

12      defendants made a settlement offer for some discount of

13      the amount that he or she owed, there is no way that the

14      consumer could know what he or she owed, and that is not

15      what the FDCPA permits.

16           THE COURT:  We come back to where you started.

17      In your view, what's crucially significant about this case

18      is that it's a daily interest case.

19           MR. FRANCIS:  Yes.  I think it's crucial because

20      especially in a class action like this, where the only

21      communications the defendant made were by letter regarding

22      it, and where there was a standardized form letter that

23      went to every member of the class by operation of U.S.

24      mail, every single letter was wrong in terms of the amount

25      the consumer owed.  There's not one consumer in the class

1    who could know what they owed, and that is not what the

2    law was designed to do.  It was designed to empower

3    consumers to know what they owed.

4         And at least if it would have said there's

5    accruing daily interest at amount of X per day, or at

6    least at a rate of X per day in terms of an interest rate,

7    that would at least enable the consumer to know it's a

8    moving target.  But here it's not clear.  You can read

9    this letter, you can hold it to the light and look at it

10   two ways, current balance, it could be fixed or it could

11   be moving, but even if it's moving, I don't know.  I don't

12   know whether it's daily or monthly.  I have no idea.  So I

13   have no idea what I'm going to owe.

14        And then the consumer is led back into that very

15   labyrinth that the Seventh Circuit said the law was

16   designed to prevent by forcing the consumer to call up,

17   what do I owe?  What am I going to owe?  And ask that of

18   the debt collector.  That is exactly what was to be

19   avoided.  And there's absolutely no way, whether it's

20   Mr. Jones or anybody else, could have known what they owed

21   based upon this communication and this type of a debt.

22        And I think going back to Your Honor's question

23   about, you know, what if Mr. Leghorn came in with a

24   survey, I think all that would be doing would be ferreting

25   out somebody's subjective intent.  Right?

```
 1              If you took a survey of 20 people or 100 people,

 2      it would be -- it wouldn't matter because the obligation

 3      rests upon the debt collector to send something that it

 4      knows clearly and effectively conveys the amount due.

 5              The fact that maybe 20 other people were

 6      sophisticated, and have -- that's not what the law is

 7      designed to do.  It's designed to create a subjective

 8      standard that protects consumers across the board in a

 9      uniform way.

10              So I don't think it would matter.

11              THE COURT:  Are you at all concerned that we've

12      come perhaps further than Congress intended when it

13      undertook to regulate the activities of debt collectors?

14              MR. FRANCIS:  I am not.  And one of the reasons

15      I am not is because most of the debt collection industry

16      is aware of this very obligation and does not send letters

17      like this.  They know how to comply.

18              And in fact, the American Collection Agencies

19      International, the trade agency group for debt collectors

20      specifies this is not the way to handle a letter like

21      this.

22              So --

23              THE COURT:  What do they say?

24              MR. FRANCIS:  What they say is that if interest

25      is going to be assessed, and interest is going to be
```

1      accruing, that you state that -- and I'm paraphrasing it,

2      but I can -- I'm just responding and I know this isn't

3      evidentiary, but I am responding to Your Honor's question

4      as to why I'm not concerned because other companies do it.

5      They comply with this.

6              And when the Seventh Circuit has given basically

7      a blessing from Judge Posner who, as Your Honor knows, is

8      not -- who is --

9              THE COURT:  I know.

10             MR. FRANCIS:  -- who has been known to issue

11     thorough decisions on these topics and others, they could

12     have chosen to follow it.

13             THE COURT:  What do you say in response to

14     Mr. Leghorn's suggestion that I certify interlocutory

15     appeal?

16             MR. FRANCIS:  We would not favor that approach

17     and/or object to it on the basis that we have a certified

18     class here that is waiting and it would be -- we have a

19     motion to approve notice that is pending.  And as this

20     Court knows, when there are class actions, it is,

21     especially ones that are certified, that it's incumbent

22     upon us as class counsel to notify them of the proceeding.

23     So we wouldn't want any further delay as to that.

24             THE COURT:  But what if I have gone too far in

25     my opinion and imposed an obligation on the defendant that

1     might be consistent with best practices but isn't required

2     by the statute?

3              MR. FRANCIS:  Well, as I think we've argued,

4     Your Honor, you're in the majority reasoning on this

5     issue, so I don't think the Court should harbor

6     apprehension about that.  I think that this Court has

7     given thorough consideration of this issue.  This is now

8     our second argument on it, and there's been significant

9     briefing and there are circuit and district court cases.

10    Your Honor's decision is in line with the majority

11    reasoning on this point.

12             THE COURT:  Well, I've looked at them pretty

13    closely now and I think that I am in a line, maybe at the

14    end of the line, and I understand that the statute aims to

15    prohibit unfair, deceptive and harassing tactics.

16    Subjectively, I understand why Mr. Leghorn might think

17    that whatever this is, it doesn't sink to that level

18    because the amount of the debt is accurately stated as of

19    the moment the letter is transmitted, so that is

20    accomplished, and the person is told you can pay off this

21    amount and be done with it, and we give you six weeks to

22    do that.  So it's not a moving target.

23             You know, what's unfair, deceptive and harassing

24    about that?

25             MR. FRANCIS:  Well, number one, Your Honor, I

1    would say that not every provision of the Fair Debt

2    Collection Practices Act is designed solely to prevent

3    unfair, deceptive and harassing practices.  Yes, albeit,

4    that is a big policy behind it, but the clear

5    communications from debt collectors to consumers regarding

6    debts, whether or not it's -- they're unfair or deceptive

7    or harassing or oppressive, the FDCPA very clearly is

8    geared toward making sure that communications are clear,

9    whether or not they're deceptive or harassing.

10              Here the communication is unclear and the reason

11   is --

12              THE COURT:  Is that a gloss that's been placed

13   on the statute by the courts?

14              MR. FRANCIS:  I don't think so when you look at

15   the fact that it's a strict liability statute, that is not

16   to be construed in terms of the materiality element.

17   There is no materiality element to an  FDCPA violation.

18              So number one, this is what Congress intended,

19   Congress intended a strict liability statute with no

20   materiality element.  And partly because even though a

21   communication itself may not be overtly harassing or

22   deceptive, if it is unclear, it can lead to that type of

23   conduct.  And that's what the act was designed to prevent.

24              As I've said on several occasions, a debt

25   collection letter that leads consumers into making phone

```
1    calls that they shouldn't have to make to be -- spend a
2    half hour on the phone with somebody whose very job
3    description is designed to get them to collect the most
4    amount of money out of that consumer, that is not what was
5    contemplated.
6            Whereas, here I would say that maybe the letter
7    itself isn't harassing, but the lack of clarity can lead
8    to conduct that overtly violates the FDCPA and is not
9    consistent with the policy goals.
10           THE COURT:  Okay.  I don't want to be harassing
11   myself, but I want to press you just a bit more, just to
12   be sure I'm clear.
13           Our debtor having received this letter knew what
14   amount he needed to pay in order to clear that for a
15   period of about six weeks.  He didn't need to pick up the
16   phone and call to ask.  He knew.  It was right in front of
17   him.
18           The uncertainty would be:  What if I don't pay
19   that amount, then what will I owe?
20           And you're saying that this uncertainty means
21   the act was violated because the consumer didn't know what
22   he would need to pay.  If he didn't take advantage of the
23   settlement offer, the act was violated.
24           MR. FRANCIS:  I think our position is a little
25   simpler than that.
```

1          THE COURT:  Okay.

2          MR. FRANCIS:  The statute says that when it's a

3     first letter sent to a consumer, statute has this specific

4     section called Section 1692g, that a debt collector must

5     convey five pieces of information to the consumer, one of

6     which is state the amount of the debt, okay?  That's

7     clear.

8          The letter that the defendant sent to the

9     consumer in this case, when he received the letter, did

10    not state the amount of his debt.  The fact that the

11    defendant would have agreed to a settlement offer for a

12    period of time does not state the amount of the debt.

13    That states how much they want to negotiate, how much

14    they're willing to negotiate for a period of time, but

15    never stated the amount of the debt by virtue of operation

16    of daily interest from the time the letter is sent to the

17    time he receives it.

18          THE COURT:  Well, it correctly states the amount

19    of the debt at the moment the letter was transmitted.

20          MR. FRANCIS:  It stated the balance at that

21    point, correct.

22          THE COURT:  You're saying it did not clearly and

23    effectively communicate the amount of the debt because, as

24    the debt collector well knew, the amount of the debt would

25    in fact be higher by the time the letter reached the

```
 1   debtor.

 2              MR. FRANCIS:  That's correct.

 3              Whereas, where there is daily interest and the

 4   debt collector knows that each letter will necessarily not

 5   be correct when it is received, then they're violating

 6   that section of the FDCPA by using that type of a letter

 7   and this language without disclosing the fact that the

 8   interest accrues, it's on a daily basis, and that the debt

 9   when the consumer receives the letter will not be the

10   amount that is stated there.

11              The settlement offer I think is a red herring.

12   I think it is -- the defendant has effectively used it to

13   mask this violation.

14              The fact of the matter is the letter did not

15   state the amount of the debt effectively and clearly.

16              There was a settlement offer made.  There's no

17   question about that.  But the fact that a defendant

18   offers -- defendant debt collector offers a consumer a

19   settlement offer does not relieve that debt collector of

20   the first duty to disclose the actual amount they owe.

21              THE COURT:  Okay.  Thank you very much.

22              MR. FRANCIS:  Thank you, Your Honor.

23              MR. LEGHORN:  I just have a few points, Your

24   Honor.

25              THE COURT:  Okay.
```

1        MR. LEGHORN:  I'll be brief, Your Honor.  Just a

2    few points.

3             And yes, because this is a strict liability

4    statute, I believe it's even more incumbent upon the

5    courts not to go so far afield of what the statute says is

6    required, and that is exactly what the plaintiffs are

7    arguing here, that there's something to be read into the

8    1692g that goes beyond it, and when debt collectors are

9    subject to a strict liability statute and the Supreme

10   Court of the United States has now said that a mistake as

11   law, even if you were following what the court said for 15

12   years and they changed their mind, you are liable for it.

13   I believe it's incumbent that we stay within the confines

14   of the law.

15            It's interesting to hear that a survey from

16   plaintiff's perspective could have been submitted by us on

17   an affirmative defense.  I think that that's just trying

18   to shift the burden on their claim.  But even so, that

19   should just speak to the fact that it isn't such a clear

20   objective view of the statute.

21            The amount in this letter was not wrong, it's

22   acknowledged.  It was acknowledged at the prior argument

23   that at the date of that letter, the number was correct.

24   And I think this also points out the distinction between

25   the Miller case and the Wahl case and those cases that go

1    different ways.  Because in Miller, it was a debt secured

2    by property with the interest accruing and changing on a

3    daily basis as to what the payoff amount would be on that

4    secured debt.

5            This is credit card debt, the least

6    sophisticated consumer, the unsophisticated consumer,

7    whatever consumer you want to term them as, when they get

8    a credit card bill from whatever, Visa, Mastercard, that

9    has interest, that is daily interest, but all those

10   consumers know, that if you pay it off by the next due

11   date, that number that was in their statement is what's

12   going to be accepted even though interest continued to

13   accrue after that point.  That's not different here.

14           The testimony in this case was that this was the

15   number that was due on the date the letter was issued,

16   this was an offer that was given.  It was good for six

17   weeks, and we would have given a grace period after that.

18           The question then about what if they called

19   up -- first of all, this letter is in their system.  They

20   would -- the person would see that there was an

21   outstanding offer that would be adhered to.  But if the

22   debtor persisted and asked, okay, with the running of

23   interest, what is the precise amount due this day, they

24   would be told.  It wasn't a changing field.  The number

25   that was set forth in the letters carried forward and

1    would be adhered to and accepted if paid by the debtor.

2             There's a case from the Eastern District of this

3    past July that addresses a situation of, well, what if

4    Midland had told them that, and if you don't pay by this

5    point, the number would change.  The Eastern District said

6    in the FICO case, that that in itself would be a violation

7    for overshadowing the requirements of the FDCPA, that the

8    FDCPA requires they state the amount of the debt that the

9    collector is trying to collect.  So it goes the other way

10   too.

11            And Your Honor, there is nothing in the record,

12   nor do I believe there is anything that indicates in any

13   of the organizations that debt collectors belong to, which

14   indicate that this letter is incorrect or in any way a

15   violation of the FDCPA.  That's not part of the record and

16   I'm aware of no such holdings, Your Honor.

17            Those were my only points.

18            THE COURT:  Thank you.

19            MR. LEGHORN:  Thank you.

20            THE COURT:  Anything further?

21            MR. FRANCIS:  No, Your Honor, unless the Court

22   has questions.

23            THE COURT:  Thank you for coming in today.

24            MR. FRANCIS:  Thank you, Your Honor.

25            MR. LEGHORN:  Thank you, Your Honor.

1                    (Proceedings adjourned at 11:13 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3                In Re: JONES vs. MIDLAND

4

5

6           I, Darlene A. Warner, RDR-CRR, Official Court

7    Reporter for the United States District Court for the

8    District of Connecticut, do hereby certify that the

9    foregoing pages are a true and accurate transcription of

10   my shorthand notes taken in the aforementioned matter to

11   the best of my skill and ability.

12

13

14

15

16           /s/_____

17                DARLENE A. WARNER, RDR-CRR
                  Official Court Reporter
                  450 Main Street, Room #223
18                Hartford, Connecticut 06103
                     (860) 547-0580
19

20

21

22

23

24

25