UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KENNETH W. JONES, on behalf of** ) | |
| **himself and all others similarly situated,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO. 3:08 CV 802 (RNC) (DFM)** |
| ) | |
| **MIDLAND FUNDING LLC, and** ) | |
| **MIDLAND CREDIT MANAGEMENT, INC.** ) | |
| **Defendants.** ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY'S FEES,
AND AWARD TO CLASS REPRESENTATIVE**

**I.      INTRODUCTION**

Plaintiff Kenneth W. Jones, by counsel, submits this brief in support of final approval of

the class action settlement.  As shown below, notice has been provided to the Class members in

accordance with the Court's order preliminarily approving the settlement (Doc. 175).  No Class

member has objected to the settlement or to the attorneys' fees, and only 1 out of 54,643 class

members who were sent notice has acted to exclude herself.  Additionally, the attorneys' fees

and costs sought are reasonable and supported by the time records of Class counsel.

Accordingly, the settlement should be granted final approval.

**II.     BACKGROUND AND SUMMARY OF SETTLEMENT**

This consumer class action asserted claims for violation of the Fair Debt Collection

Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*., the Creditor's Collection Practices Act, Conn.

Gen. Stat. § 36a-645 *et seq*., and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §

42-110b, -g (CUTPA).  The Complaint, filed May 7, 2008, alleged that Defendants Midland

Funding LLC and Midland Credit Management, Inc. ("Defendants" or "Midland") violated these

laws by delivering to consumers a false, deceptive and misleading form collection letter that falsely represented the amount of the debt Defendants were attempting to collect. Plaintiff sought to represent a class of Connecticut consumers who were sent the offending collection letter during the class period commencing one year prior to the filing of the lawsuit, through the resolution of the case.

Defendants filed an Amended Answer to the Complaint on August 19, 2008. The parties then commenced a period of over four years of litigation in which they took discovery, contested each other's motions and litigated appeals to the Second Circuit. The case was aggressively defended by the two Defendants, as the following summary of the litigation demonstrates:

- Defendants proposed expert testimony which Plaintiff moved to preclude in January 2009 and his motion was granted on May 19, 2009.

- January 30, 2009 - Plaintiff moved for class certification and Defendants opposed class certification.

- October 13, 2009 - the Court entered an Order granting class certification as to Plaintiff's FDCPA claim.

- November 2, 2009 - Defendants moved for summary judgment, which Plaintiff opposed.

- November 24, 2009 - Defendants moved for a protective order, which Plaintiff opposed, and which was denied by the Court on September 17, 2010.

- December 16, 2010 - the Court granted summary judgment in favor of the Plaintiff on the FDCPA claims and in favor of the Defendants on the Connecticut state law claims.

- January 13, 2011 - Defendants moved for reconsideration of the Court's entry of summary judgment in favor of Plaintiff, which Plaintiff opposed.

- January 14, 2011 - Defendants appealed the Court's ruling on summary judgment to the Court of Appeals for the Second Circuit, but withdrew the appeal on April 18, 2011.

- January 14, 2011 - Plaintiff moved for approval of a form of notice to the certified class, which Defendants opposed, and which the Court denied without prejudice to renewal on September 30, 2011.

- April 18, 2011 - Plaintiff moved for an interim award of attorneys' fees as a prevailing party under the FDCPA, which Defendants opposed, and which the Court denied without prejudice to renewal on September 30, 2011.

- September 30, 2011 - the Court granted Defendants' motion to reconsider the ruling on summary judgment.

- February 13, 2012 - the Court heard oral argument on Defendants' motion for reconsideration.

- April 11, 2012 - the Court entered its ruling and order granting summary judgment in part in favor of Plaintiff.

- June 6, 2012 - Defendants moved for a certificate of appealability of the Court's order, which Plaintiff opposed.

- June 15, 2012 - the Court heard oral argument via a telephone conference on Defendants' motion for certificate of appealability.

- August 13, 2012 - the Court granted the motion for certificate of appealability.

- November 13, 2012 - Defendants filed a notice of interlocutory appeal with the Court of Appeals.[1]

In late 2012, the parties agreed to meet with a private mediator, former state court judge Beverly Hodgson, to oversee settlement discussions.  With the assistance of Judge Hodgson, through a full day of face to face negotiations and followed by several months of telephone calls

---

[1]     The Court of Appeals, on May 24, 2013, entered an Order granting limited remand of the case to this Court, with the requirement that Appellants file a status update within thirty days of the Order and every fourteen days thereafter.

and conferences, the substantive terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy.[2]

In a class action under the FDCPA, a successful class may recover as statutory damages up to the lesser of $500,000 or 1% of a defendant's net worth.[3]  In this case, financial documents and deposition testimony showed that Midland's net worth was such that the $500,000 statutory cap was in play.  Under the settlement, Defendants have agreed to pay a total of $525,000 that will be used (a) to pay the costs of notice and administration of approximately $37,169; (b) establish a fund of approximately $255,000 from which Claiming Class Members can claim a *pro rata* share, (c) to pay Plaintiff an individual settlement award of $7,500 and (d) to pay Class counsel's attorney fees and costs in the amount of $225,000, subject to Court approval.  Those amounts that cannot be distributed to Class members will be distributed to the National Consumer Law Center in Boston, Massachusetts as a *cy pres* remedy.

The accompanying Affidavit of Arlene Antonetti, Case Manager for First Class, Inc., the Claims Administrator, establishes that notice of the class action settlement was mailed to the Class members in accordance with the Court's Order of Preliminary Approval.  A list of 55,883 class members was forwarded to First Class, Inc. for mailing.[4]  Following a verification process and the removal of duplicate records within the Class list, the notice and a postcard to request a

---

[2]    "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."  *Hainey v. Parrot,* 617 F. Supp.2d 668, 673 (S.D. Ohio 2007).

[3]    15 U.S.C. § 1692k(a)(2)(B)(ii).

[4]    Antonetti Aff. ¶ 3.

claim form were mailed on September 9, 2013 to 54,643 class members.[5]  A total of 12,012 postcards were returned as undeliverable with no forwarding address; 111 were returned with a new address and were re-mailed.[6]

One class member requested to be excluded from the settlement.  No objections were received.[7]

The Antonetti Affidavit states that, as of November 20, 2013, a total of 2,492 Class members submitted claim forms.  That total includes 177 received after the bar date of November 8, 2013.

If the Court grants final approval and allows all claims submitted as of the fairness hearing, each Claiming Class Member will receive a payment of approximately $102.00.[8]  If the Court does not allow the untimely claim forms, then there are approximately 2,315 Claiming Class Members and each will receive a payment of approximately $110.00. It may well be that

---

[5]     *Id*. at ¶¶ 4-6.

[6]     *Id*. at ¶¶ 8-9.

[7]     *Id*. at ¶¶ 11-12.

[8]     As noted in Plaintiff's Motion for Preliminary Approval (Doc. 174-1), this amount compares very favorably with the amounts paid out to class members in other FDCPA class settlements.  *See, e.g.*, *Bonnett v. Education Debt Services, Inc.*, 2003 WL 21658267 (E.D. Pa. May 9, 2003) (granting final approval to an award of $77.46 to each of 284 class members who returned claim forms); *Cope v. Duggins*, 203 F.Supp.2d 650 (E.D. La. 2002) (672 class members out of 4,925 returned claim forms and received $11.90 each); *Henderson v. Eaton*, 2002 WL 3145728 (E.D. La. October 25, 2002) (granting final approval to an award of $3,000 to 142 class members to be divided on a *pro rata* basis, or about $21.00 for each class member); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F.Supp.2d 436 (E.D. Pa. Nov. 18, 2002) (319 out of 3,413 class members received $62 each); *Thomas v. NCO Financial Systems, Inc.*, 2002 WL 1773035 (E.D. Pa. July 31, 2002) (court preliminarily approved a settlement that, with a claim form return rate of 5%, provided each claimant with $1.09, representing 150% of the maximum class recovery); *Saunders v. Berks Credit & Collections, Inc.*, 2002 WL 1497374 (E.D. Pa. July 11, 2002) (159 out of over 3,000 class members claimed a portion of the settlement funds and received $62.54 each).

claim forms continue to be submitted to First Class up through the December 2, 2013 fairness hearing.  Because there is not a material difference in the amount of the checks to be paid to the Class if all claims are allowed, Plaintiff requests that the Court allow all claims received by First Class by December 2, 2013 to be included in the *pro rata* distribution.

III.    **FACTORS BEARING ON FINAL APPROVAL**

The Second Circuit has enumerated nine factors, known as the *Grinnell* factors, to guide courts in evaluating the fairness of a proposed settlement:

> (1) The complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.][9]

The law "favors settlement of class actions" just as in other cases.[10]  The central question raised by a proposed settlement of the class action is that the compromise is fair, reasonable, and adequate.[11]

A.    **The Complexity, Expense And Likely Duration Of The Litigation**

Although not particularly complex factually, continued litigation would be very costly. Defendants' litigation conduct to date has demonstrated that they wish to take the legal issues to the Second Circuit for an appellate ruling; they have appealed at least twice so far.  If the

---

[9]      *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).

[10]     *In re: Toys R Us Antitrust Litigation*, 191 F.R.D. 347, 350 (E.D.N.Y. 2000).

[11]     *Id.,* citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

settlement is not approved, it is likely that a final adjudication would not take place for several years.  Accordingly, this factor favors approval of the settlement.

### B.      Reaction Of The Class To The Settlement

The reaction of the Class to the settlement has been positive. There have not been any objections, and only 1 out of the 54,643 Class members who were sent notice has excluded herself.[12]  The complete absence of objectors and the single opt-out in a class this size tips "heavily in favor of a strong presumption of fairness."[13]

### C.      The Stage Of The Proceedings And The Amount Of Discovery Completed

The parties, through counsel, engaged in protracted formal and informal discovery to determine the Class size and other key information needed to move for class certification and to file dispositive motions.  Plaintiff took the depositions of several Rule 30(b)(6) witnesses, and Defendants took the deposition of the Plaintiff.  Plaintiff also had to file motions to compel discovery that Defendants had refused to produce and had to seek a Court order to obtain full financial information concerning the Midland entities (Doc. 55).  The information that Plaintiff eventually obtained provided sufficient knowledge to effectively evaluate the potential recovery of the Class claim and to make a reasonable determination that a greater recovery could not be obtained without further litigation and that the case should settle.

---

[12]     Antonetti Aff., ¶ 12.

[13]     *See Tiro v. Public House Investments, LLC*, 2013 WL 4830949, *7 (S.D.N.Y. Sept. 13, 2013) ("'It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.' Where relatively few class members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement.") (Citations omitted).

### D.    The Risk Of Establishing Liability And Damages

Although Plaintiff believes liability to be strong, there is no great benefit to be gained by proceeding with further litigation, including the Defendants' appeal to the Second Circuit, which posed somewhat of a risk for the liability determination the Plaintiff had won before this Court. As discussed above, Class members are receiving a very reasonable amount of statutory damages permitted under the FDCPA.  Additionally, Plaintiff did not believe it likely that he could have established any actual damages under the FDCPA.  Proceeding with the litigation would present the possibility of a lesser recovery, and this factor heavily favors approval of the settlement.

### E.    The Risks Of Maintaining The Class Action Through Trial

During trial, the unexpected does happen and must be taken into account.  For example, class representatives sometimes move out of the jurisdiction.  On two other occasions, class counsel represented plaintiffs that died before having an opportunity to move for class certification.  Although Plaintiff's attorneys have no reason to believe that Mr. Jones is in anything other than good health and that he makes an excellent class representative, the vagaries of litigation must be taken into account in evaluating a settlement's reasonableness.

Additionally, while the Court has already certified the Class, it would not be unexpected if Defendants were to seek decertification, either before trial, during trial or on appeal.  *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, *12 (E.D. Pa. July 11, 2002). While the success of such attempts is uncertain at best, the settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings.

### F.    The Ability Of Defendant To Withstand A Greater Judgment

The combined net worth of both Defendants is such that they do indeed have the ability to withstand a greater judgment.  Here, under the FDCPA, Plaintiff believes that the Defendants'

8

combined exposure is the $500,000 statutory cap for two defendant debt collectors, a total of $1,000,000, pursuant to section 1692k.[14]  The two Defendants made it clear during the settlement negotiations that they did not share that view of the law and that any settlement premised on their combined exposure was a deal-breaker.  Thus, this factor may be considered neutral.

G. **The Range Of Reasonableness Of The Settlement In Light Of The Best Possible Recovery In Light Of All The Attendant Risks; Opinions Of Class Counsel**

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  The expense of a trial and the corresponding use of judicial resources and the resources of the parties would have been substantial.  Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery.   Thus, a settlement is advantageous to all concerned.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*,

---

[14]      *See Hernandez v. Midland Credit Mgmt. Inc.*, 2007 WL 2874059, *17 (N.D. Ill. Sept. 25, 2007) (holding that both Midland Credit Management and affiliated holding company Encore Capital Group were debt collectors under the FDCPA, and that Encore was "liable to the same extent as MCM."); *Overcash v. United Abstract Group, Inc*., 549 F. Supp.2d 193, 196-97 (N.D.N.Y. 2008) (finding that section 1692k is cast in terms of defendant's liability, not plaintiff's recovery, and therefore when there are multiple defendants, the plaintiff's recovery is individual, not joint and several).

449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiff is confident of his ability to prevail on the merits, and indeed the Court has already granted him summary judgment as to liability, the Court also certified the issue for interlocutory appeal, and no final adjudication has been made as to the validity of the Class claims.

Through the proposed settlement, Plaintiff has obtained a very reasonable benefit for the Class under the FDCPA.  Moreover, through the practice changes that Plaintiff's lawsuit triggered, Plaintiff has achieved what essentially acts as a settlement injunction prohibiting the Defendants from making the same misrepresentations in the future.  This settlement allows Plaintiff to avoid the risks described above and ensures an immediate benefit to the Class.

Plaintiff and Class counsel believe the proposed settlement is well within the range of reasonableness and should be approved.

## IV.    THE ATTORNEYS' FEES AND COSTS SOUGHT BY PLAINTIFF <u>ARE FAIR AND REASONABLE</u>

The parties have agreed upon $225,000 as a reasonable payment for Class counsel's fees and expenses, a sum which eventually turned out to be substantially less than counsel's lodestar. This sum was negotiated only after the parties had already reached an agreement in principle as to the settlement for the Class and the costs that Defendants would pay for class notice and settlement administration.

Plaintiff's counsel has each submitted a declaration describing each firm's lodestar and expenses as follows: for the Law Office of Joanne S. Faulkner, $46,612, reflecting 116.5 hours of time, and costs of $494.89 (*see* Fee Affidavit of Joanne S. Faulkner); for the firm of Francis &

Mailman, P.C., $156,730.00, reflecting over 311 hours of attorney and paralegal time, and costs of $5,112.85 (*see* Declaration of David A. Searles); and, for Donovan Axler, LLC, $110, 657.84, reflecting 197 hours of attorney and paralegal time, and costs of $2,473.88 (*see* Declaration of Noah Axler).  Time for all counsel totals $313,999.84, and costs total $8,081.62, for a total amount of $322,081.46.

The negotiated fee of $225,000 for all time and for reimbursement of expenses, which is approximately 70% of counsel's actual lodestar, is therefore fair and reasonable and should be approved.

A.     **In Awarding Fees And Costs, Courts Should Bear In Mind Congress' Goals In Mandating Fee-Shifting Under The FDCPA**

Congress enacted the FDCPA more than three decades ago because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy."[15] Congress found that existing laws and procedures were "inadequate to protect consumers" and "means other than misrepresentation or other abusive debt collection techniques are available for the effective collection of debts."[16]  Congress encouraged consumers to bring FDCPA actions before Federal Article III judges by eliminating any "amount in controversy" requirement.[17]  Congress also

---

[15]     15 U.S.C. § 1692(a).

[16]     15 U.S.C. § 1692(b), (c).

[17]     15 U.S.C. § 1692k(d).

fostered enforcement of the FDCPA by enacting statutory damages and mandating that debt collectors pay "reasonable attorney's fee as determined by the court."[18]

### 1. FDCPA fee standards

Where, as here, a statutory attorney fees provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances."[19]  An award of fees is mandatory in FDCPA cases.[20]  Fees are mandatory even if there has been no award of actual or statutory damages.[21]  "Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them.  Unless consumers can recover attorney's fees it may not be possible for them to pursue small claims . . . . [U]nscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds.  Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs."[22]

### 2. The proposed fee is reasonable

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,[23] the Second Circuit clarified the proper analysis for a district court to undertake in exercising its discretion in

---

[18]     15 U.S.C. § 1692k(a)(3).

[19]     *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (Truth in Lending Act).

[20]     *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *Graziano v. Harrison*,  950 F.2d  107, 113-14 (3d Cir. 1991) (FDCPA "mandates an  award of  attorney's  fees as a means  of  fulfilling  Congress's intent that the Act should be enforced by debtors acting as private  attorneys general").

[21]     *Emanuel v.  American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989); *Pipiles v.  Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989).

[22]     *Venes v. Professional Service Bureau, Inc*., 353 N.W.2d 671,675 (Minn. App. 1984).

[23]     493 F.3d 110, 117-118 (2d Cir. 2007).

awarding attorney's fees.  A court is to "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson*[24] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee'."

As shown below, the *Johnson* factors support the reasonableness of the negotiated fee. The *Johnson* factors are:

(1)   the time and labor required;

(2)   the novelty and difficulty of the questions;

(3)   the skill requisite to perform the legal services properly;

(4)   the preclusion of other employment by the attorney due to acceptance of the case;

(5)   the customary fee in the community;

(6)   whether the fee is fixed or contingent;

(7)   time limitations imposed by the client or the circumstances;

(8)   the amount of time involved and the results obtained;

(9)   the experience, reputation, and ability of the attorneys;

---

[24]     *Johnson v. Georgia Highway Exp., Inc*. 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

There is no strict formula as to how these factors are to be applied.[25]  Once a figure for attorney's fees is calculated using the *Johnson* factors, that amount becomes the "lodestar" which can then be adjusted upwards or downwards, again using the *Johnson* factors.[26]  "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[27]  These factors support a finding that the negotiated fee of $225,000 is fair and reasonable.

### a)  <u>The time and labor required.</u>

The work put in by Class counsel since this case was filed over five years ago in May 2008 totals approximately 625 hours of time, and the value of the lodestar calculation of $314,000  more than supports the claimed fee of $225,000.

### b)  <u>The novelty and difficulty of the questions.</u>

This case, as evidenced by the multiple motions, oral arguments and series of decisions by the Court, presented difficult questions of liability under the FDCPA, with the Court having to weigh conflicting decisions from other circuits.  The contentious history of the litigation underscores the factor of a difficult question as a basis to uphold the negotiated fee.  Even if the

---

[25]     *Trimpter v. City of Norfolk, Va.*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994).

[26]     *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

[27]     *Id.* at 434, n.9.

Court were to find that this case was entirely straightforward, the fee amount may not be reduced.[28]

<strong>c)      <u>The skill requisite to perform the legal services properly</u>.</strong>

Successful litigation of a consumer protection case requires skill and familiarity with the issues involved.  Plaintiff's counsel knows of very few attorneys who purport to be able to litigate class action consumer protection cases.  Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar.

The experience and skill of Plaintiff's counsel were instrumental to the results obtained in this case.  Because of the skill of Plaintiff's counsel, no reason exists for a downward adjustment of the lodestar.  The skill and experience is reflected in the hourly rates applied above and support the claimed fee.

<strong>d)      <u>The preclusion of other employment</u>.</strong>

The time spent on this case was not, and could not be, spent at the same time on other cases.  There are substantial opportunity costs in preparing the necessary documentation and briefing to represent a plaintiff in a contingency or fee-shifting case in federal court.  The substantial amount of time expended on Plaintiff's behalf was time which would have been spent on other matters, had this case not been filed or litigated to this extent.

It is appropriate to consider that whenever an attorney takes a case, he or she does so to the exclusion of accepting other work.  Plaintiff's counsel expended the requisite amount of time

---

[28]     *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985).

reviewing the case and litigating it to its conclusion, to the exclusion of helping other consumers. This factor provides no basis for any adjustment of the lodestar.

<strong>e)</strong>      <strong><u>The customary fee for like work in the community</u></strong>.

As set forth in the accompanying declarations of counsel, Plaintiff's fee request is well within the range of similar work, include hourly rates approved by other courts, and is particularly reasonable for class action litigation. The fee is thus reasonable and within the going rate for like work in the area of consumer class action litigation around the country.

<strong>f)</strong>      <strong><u>Whether the fee is fixed or contingent</u></strong>.

An award of attorney fees in a contingency fee matter should compensate counsel for the risk of receiving no compensation. In consumer protection cases, the fee is very often contingent – not on the amount of damages, but on an award by the court or agreement by the opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation.[29] "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." There are many examples where a plaintiff's attorney prevailed in contested litigation, only to then see the defendant file bankruptcy or prove to be judgment-proof. In those cases, all counsel's efforts go for naught.

---

[29]      *Blum v. Stenson*, 465 U.S. 886, 903 (1984).

Plaintiff's counsel was willing to provide services to Mr. Jones whether he won or lost his case and whether or not they were paid for that work.  This factor justifies the hourly rates and the fee claimed.

**g)     Time limitations imposed by the client or the circumstances.**

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and those set by the Court.  Mr. Jones is required to submit a *Johnson* factors review, as mandated by the Second Circuit, in order to present his statutory costs and attorney's fees award, but this factor is of no consequence.

**h)     The amount involved and the results obtained.**

The results obtained for the Plaintiff and the Class were excellent relative to other FDCPA class settlements, further supporting the negotiated fee.

**i)     The experience, reputation and ability of the attorneys.**

Attorney Joanne Faulkner has been practicing law for 50 years and her practice focuses exclusively on representing consumers.[30]  Ms. Faulkner is the former Chair of the consumer law section of the Connecticut Bar Association, and was formerly on the board of directors of the National Consumer Law Center and is presently a trustee for the organization. As Attorney Faulkner's affidavit shows, she has substantial experience litigating complex consumer law cases.

Attorney James Francis has been practicing law for eighteen years and has spent virtually all of that time focusing on consumer law matters.  Like Attorney Faulkner, he is nationally recognized in the field; he lectures regularly on consumer protection issues on the state and

---

[30]     *See* accompanying Affidavit of Joanne S. Faulkner.

national level, has substantial experience with consumer protection class actions and has been appointed by courts throughout the country to handle class action litigation such as this.[31]

Attorney David A. Searles has represented the Plaintiff and the Class since being brought into the case at its beginning, first as a partner at the Philadelphia firm of Donovan Searles, LLC, and later as counsel at the firm of Francis & Mailman, P.C.  Mr. Searles has practiced law for thirty-eight years and has extensive consumer litigation and class action experience, having been certified as class counsel in many nationwide class actions.[32]

Attorney Noah Axler is a partner with the Philadelphia firm of Donovan Axler, LLC. Mr. Axler has served as class counsel in numerous consumer and antitrust class actions around the country.  He is an editor of the Pennsylvania chapter of the ABA's *Survey of State Class Action Law* and of *Pennsylvania Consumer Law*.[33]

 Plaintiff submits that his attorneys readily meet the standards for experience, reputation and ability required to satisfy this *Johnson* factor.

### j)        The undesirability of the case.

There are very few attorneys who have the knowledge, ability and willingness to represent consumers in this area of law.  Most attorneys are unwilling to take the risk of large investments of time for what appear at first blush to be minor, small dollar cases. Other than Ms. Faulkner, very few attorneys in Connecticut regularly prosecute FDCPA class actions to conclusion.   Searches on Westlaw and PACER will reveal that many of the successful

---

[31]        See accompanying Declaration of David A. Searles.

[32]        *Id*.

[33]        See accompanying Declaration of Noah Axler.

certifications of a class under the FDCPA in Connecticut over the past ten years have involved Ms. Faulkner as class counsel.   In two of such cases, Ms. Faulkner co-counseled with Mr. Francis and Mr. Searles.[34]

### k)   The nature and length of the professional relationship with the client.

Mr. Jones retained Attorney Faulkner specifically to pursue the specialized consumer protection laws at issue.   Her employment was sought because of her legal abilities and reputations in this area of the law.   Ms. Faulkner in turn sought assistance from Mr. Francis and Mr. Searles, due to their extensive consumer protection class action expertise.   This *Johnson* factor is in some respects inapplicable or neutral to attorneys whose representations are limited to consumer protection claims, which are episodic, rather than ongoing, matters.

### l)   Awards in similar cases.

There are few reported federal cases in Connecticut discussing attorney fee awards in class actions.   Courts recognize that fee awards are to mimic the marketplace.   Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law."[35]

Here, counsel's actual time and expense total of $322,000 is approximately 1.4 times the amount of $225,000 that Defendants have agreed to pay, subject to the Court's approval.   For

---

[34]     *Brenner v. I.C. System, Inc*., C.A. No. 06-1707 (D. Conn. 2008); *Petrolito v. Arrow Financial Services*, LLC, 221 F.R.D. 303, 310 (D. Conn. 2004).

[35]     *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995); *Zagorski v. Midwest Billing Services, Inc*., 128 F.3d 1164 (7th Cir. 1997).

these reasons, the size of the award sought provides no reason to make any adjustment to the lodestar.

### 3.   Award To Representative Plaintiff

Plaintiff has requested, and Defendants have agreed, to a modest $7,500 award to the representative Plaintiff in settlement of his individual claim[36] and for his services on behalf of the Class.  Mr. Jones spent time with class counsel, assisted with the case, sat for a deposition and kept himself apprised of case status and developments.  Such an award is both reasonable and of the type commonly approved.[37]

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the settlement, the attorneys' fees and costs and the Class representative award.  A proposed order of final approval, in the form agreed to by the parties in the Settlement Agreement, and a proposed order awarding counsel fees and costs, are both attached.

                                        LAW OFFICES OF JOANNE FAULKNER

Date: November 22, 2013          By:   _Joanne S. Faulkner_
                                        Joanne S. Faulkner, Esquire
                                        123 Avon Street
                                        New Haven, CT 06511
                                        (203) 772 0395

---

[36]     The FDCPA specifically provides that a class representative may recover more than members of the class he represents.  _Fry v. Hayt, Hayt & Landau_, 198 F.R.D. 461, 472 (E.D. Pa. 2000).

[37]     _See Sapp v. Experian Information Solutions, Inc_., 2013 WL 2130956 (E.D. Pa. May 15, 2013) (awarding class representative $10,000); _Barel v. Bank of America_, 2009 WL 122805, *12 (E.D. Pa. Jan. 16, 2009) (same); _Perry v. FleetBoston Financial Corp._, 229 F.R.D.105 (E.D. Pa. 2005) (awarding $5,000 each to three representative plaintiffs); _Bonett v. Education Debt Services, Inc_., 2003 WL 21658267, *7 (E.D. Pa. May 9, 2003) (awarding $4,000 to class representative, citing cases).

**FRANCIS & MAILMAN, P.C.**
James A. Francis, Esquire
David A. Searles, Esquire
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
(215) 735-8600

**DONOVAN AXLER, LLC**
Noah Axler, Esquire
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
(215) 732-6067

Attorneys for Kenneth Jones and Settlement Class

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 22d[th] day of November, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                        *s/ David A. Searles*
                        David A. Searles